STEVENS *v.* LAKEWOOD UTILITIES CO.

1. COMPROMISE AND SETTLEMENT—CONTRACTS—WORK AND LABOR.
   Plaintiff, who supplied defendant's ice house with ice, was not entitled to a directed verdict in his favor where he and defendant settled a dispute with regard to the manner in which he had packed the ice, by agreeing that defendant should pay a substantial part of the price agreed upon before March 24th and the balance on May 15th, if the ice was in good condition at the date named, and where the evidence was in conflict whether the ice was in good or in poor condition at the stipulated time, the issue raised was for the jury.

2. SAME—EVIDENCE—VALUE.
   Evidence to show the value of the work done was therefore immaterial; if the ice was in fact in good condition at the date agreed upon, plaintiff should have been permitted to recover the deferred payment; if not, defendant was entitled to a verdict.

3. SAME—ISSUES—DIRECTING VERDICT.
   The trial court erred in excluding evidence relative to the condition of the ice at the time fixed by plaintiff and defendant according to the later contract; and it was also erroneous to advise the jury that plaintiff might, although they found he was in default, recover a part of the deferred payment.

4. SAME—FORFEITURE—INSTRUCTIONS TO JURY.
   There was reversible error at the trial in charging the jury that the settlement between the parties provided for a forfeiture and that the law abhors a forfeiture.

Error to Muskegon; Sullivan, J.   Submitted October 13, 1915.   (Docket No. 73.)   Decided December 21, 1915.

Assumpsit by Samuel Stevens against the Lakewood Utilities Company for a balance claimed to be due on

a contract to fill defendant's ice houses. Judgment for plaintiff. Defendant brings error. Reversed.

*Cross, Vanderwerp, Foote & Ross,* for appellant.

*Turner & Turner,* for appellee.

The initial written evidence affecting the issue is the following:

"CHICAGO, January 21, 1914.

"I, Samuel Stevens, agree to fill three icehouses belonging to the Lakewood Utilities Company and B. C. Mayo for the sum of two hundred and eighty dollars. This sum is to include all materials to be furnished without additional charge by me, except the materials for slide, which are to be furnished by the company, if possible, or if furnished by me, are to be paid extra for.

"The services of Mr. Alex Ferguson as helper at two dollars a day are to be deducted from the amount of two hundred and eighty dollars for whatever time he puts in on this work.

"It is understood that this work should be done at whatever time the weather conditions permit"

—which was signed by the plaintiff. He filled the three icehouses and sent the defendant his bill, which the defendant received, and on March 4, 1914, wrote him that his bill would be honored after defendant had received a report. Under date March 7th, defendant wrote plaintiff that he had received a most unsatisfactory report in regard to the quality of the ice; that it was not 10 inches thick; a quantity of it had 3 or 4 inches of snow on top; that it was packed too close to the center walls on both sides; and that the inside wall (between two icehouses) had been cut through to allow the ice to be shifted back and forth. Later, under date March 16th, defendant wrote plaintiff, reaffirming the charges that the ice was of poor quality and improperly stored, and suggesting that plaintiff could remedy the conditions in part. Under date March 19th plaintiff wrote the manager of defendant the following letter:

"WHITEHALL, MICH., March 19, 1914.
"MR. MAYO,
   "Chicago, Ill.
*"Dear Sir:*
   "In reply to yours of March 16th, I have been to the icehouse and replaced the ties that were removed to get the ice in.  I have also rearranged the packing on the ice but I surely will not molest the ice for there is no better ice to be had than that already in the house. Now I will tell you what I will do; you pay me $220.00 on or before March 24, 1914, and I will look after the ice and keep it packed and in good shape until May 15, 1914.  If the ice is in good shape at that time (May 15, 1914) then I am to receive the remainder of my contract money, but if the ice is not in good keeping order then I forfeit the remainder of my contract money."

The subsequent correspondence is here set out in full:

"CHICAGO, March 20, 1914.
*"Dear Sir:*
   "In re yours of the 19th, will say that the arrangement you propose seems satisfactory on the face of it. We will pay you $220.00 before April 1st, 1914, provided you look after the ice and keep it packed in good shape until May 15th, 1914.  At that date you are to receive the remainder of your contract money, provided the ice is in good shape and satisfactory to us, but if the ice is not in satisfactory condition, you agree to forfeit the remainder of your contract money. Please confirm this letter."

"WHITEHALL, MICH., March 23, 1914.
"MR. G. G. MAYO,
   "Chicago, Ill.
*"Dear Sir:*
   "I have just received yours of March 20th, accepting my proposition of the 19th inst.  Your acceptance is one-sided wherein it states the ice must be satisfactory to you upon May 15th.  This gives me no voice in the matter whatever.  However, I will pass it as it is, trusting you to do the square thing by me.  I will expect the $220.00 before April 1st, 1914."

"CHICAGO, March 24, 1914.
*"Dear Sir:*

"I have just received yours of March 23d accepting our recent proposition, and we will send you check for $220.00 as your first payment on your contract with us, as hitherto stated, before April 1st, 1914."

"CHICAGO, April 1, 1914.
"MR. SAMUEL STEVENS,
     "Lakewood, Whitehall, Michigan.
*"Dear Sir:*

"We are inclosing herewith check for two hundred twenty ($220.00) dollars to apply on contract dated January 21st, 1914. The balance of $60.00 will be remitted to you on May 15th if ice is satisfactory at that time."

"WHITEHALL, MICH., May 16, 1914.
"LAKEWOOD UTILITIES CO.
*"Gentlemen:*

"As per agreement I have taken care of ice and kept it packed in good shape to May 15, 1914. There is remaining due me on my contract the sum of $57.80. You will please attend to this at once."

"CHICAGO, May 20, 1914.
"MR. SAMUEL STEVENS,
     "Lakewood, Whitehall, Michigan.
*"My Dear Mr. Stevens:*

"I have received the report that the ice in the icehouses is in very bad condition. I will personally inspect it next Sunday, May 24th, at which time you can see me, and we can arrange settlement at that time."

This action is brought to recover the balance of $57.80, and interest, alleged to be due to the plaintiff.

It is the contention of the plaintiff that he substantially performed, as he agreed to perform, the contract to fill the icehouses, and was therefore entitled to receive the contract price when the work was completed; that the claim of the defendant that he had not substantially performed his contract was not a good-faith claim, nor based upon facts; that the subsequent arrangement indicated by the correspondence was without consideration in so far as it amounted to a post-

ponement of his right to receive the balance due him, and that in any event the claim of the defendant that the ice was not satisfactory on May 15, 1914, was captiously made. Upon this theory testimony was taken and the case submitted to the jury, which returned a verdict in favor of the plaintiff, upon which judgment was entered.

It is the contention of the defendant, appellant, that the testimony showed beyond question that it was a matter of dispute between the parties whether plaintiff had performed his contract in a substantial manner; that this dispute was settled and adjusted by the making of a compromise agreement, according to which plaintiff was to be paid $220 on April 1, 1914, and the remainder of the contract price if the ice was in good condition and satisfactory to defendant May 15, 1914; otherwise he was to receive no further pay; that the testimony shows beyond question that on May 15th the ice was not in a condition satisfactory to defendant, was insufficiently packed with sawdust, had melted materially around the edges, and had fallen one-third of the height inside of the icehouses; that it was therefore the duty of the court to direct a verdict for the defendant upon its motion.

Error is assigned upon a ruling of the court excluding a letter written by defendant to plaintiff under date March 7, 1914, in which is recited the particulars of the condition of the ice reported by defendant's agent, the argument being that the letter was important as tending to show an honest claim on the part of defendant that the plaintiff's work was improperly done.

Error is assigned upon a ruling admitting an answer to a question asked plaintiff:

"*Q.* Was your work worth—the work that was done there fairly worth the sum—the contract price?"

Counsel for the defendant was reading a deposition to the jury. A certain objection having been made by

plaintiff's attorney, the court examined the deposition. The question asked the witness was:

"In what condition did you find the ice? Please describe fully."

A part of the answer to this question having been read, the court, having examined and marked the deposition, said:

"Read that answer there excepting the part in brackets. Read the question before it and that part of it not marked out. There is a lot of stuff included in the answer that I think ought not to go in, and I have eliminated the parts that I think ought not to go in in the answer, and that part will be stricken out, and you may read the answer."

The portion of the answer excluded contained the statement, "There was an insufficient amount of sawdust used in packing." For defendant the court, having concluded the charge to the jury, was requested to further instruct, and refused to instruct, the jury that plaintiff, having accepted the check for $220, after the stipulated time for payment, which was before April 1st, and thereafter continued in performance of the compromise agreement, cannot set up the default of defendant in not paying before April 1st. The charge of the court is criticised, seven errors being assigned. In substance, the criticism is that issues were submitted when no such issues were made by the testimony; that the charge was argumentative, the argument being favorable to plaintiff. Among other things, the court said:

"If it [the ice] was in poor shape—if really it was in such a poor condition and packed in such a poor condition that it was in poor shape, then this man ought not to recover the whole $57.80 but should recover what you say it was worth to the defendants who used the ice, not to exceed $57.80."

OSTRANDER, J. (*after stating the facts*).   The undisputed testimony presented a single issue for the jury, which was whether the ice on May 15, 1914, was in good shape, in good keeping order.   I am satisfied that the trial court intended to submit this as the controlling issue.   A charge of considerable length was given which, when read in its entirety, seems to present other issues and to permit a recovery by plaintiff, no matter in what condition the ice may have been on May 15, 1914.

The _ce was stored for the purpose of keeping it for use in warm weather—for use after May 15th—and there are, of course, proper and improper ways of storing it.   Plaintiff was, or professed to be, satisfied that his work had been well done.   Defendant was protesting that it was illy done.   There can be no question about this.   The issue might have then been determined according to the facts.   It was plaintiff who proposed that time, and some care on his part, would demonstrate that the ice was well stored, a proposal assented to by defendant.   It was agreed that the condition of the ice on May 15th should determine whether plaintiff should or should not be paid the remainder of the contract price.   If the ice was then in reasonably good condition, defendant could not refuse payment.   However plaintiff may have construed the bargain, the matter in no way involved the personal tastes, sensibilities, fancy, or individual judgment of the party to be satisfied.   It is therefore evident that the value of the work actually done was immaterial, and equally evident that if the ice was not in fairly good condition on May 15th the jury was not at liberty to measure the portion of the reserved payment plaintiff ought to receive.   Upon the real issue both parties were entitled to present the testimony tending to prove the actual conditions on May 15th, they having agreed, in writ-

ing, that such condition should determine whether plaintiff should receive any further sum. Plaintiff did not regard the fact that the $220 reached him after April 1st as a breach of the arrangement finally made. On the contrary, he professed to thereafter continue to do what it had been agreed he should do. His final demand was based upon the proposition that:

"I have taken care of the ice and kept it packed in good shape to May 15, 1914. There is remaining due me on my contract the sum of $57.80."

It was error to admit testimony to prove the value of the work done by plaintiff; error to exclude testimony tending to prove the condition of the ice May 15th; error to advise the jury that plaintiff might, notwithstanding default on his part, recover some portion of the deferred payment; error to instruct the jury that the agreement of the parties provided for a forfeiture of $57.80, and that the law abhors a forfeiture.

It is most unfortunate that a cause involving so little should be remanded for a new trial. However, such must be the order.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.