### CHAFFEE *v.* CHAFFEE.

COMPROMISE AND SETTLEMENT—QUESTION FOR JURY.

The evidence presented a jury question relating to the sufficiency of evidence of a consideration for a compromise between defendant, the widow of deceased, and the plaintiff, his mother, whereby a bond was given by the widow to the mother conditioned on the payment of monthly sums to the mother for life, where the mother claimed that a will was in existence, under which she was entitled to a specific sum of money out of the estate and the widow claimed that it had been revoked and that the deceased had requested her to make provision for the mother, and she had agreed to do so.

Error to Kent; Perkins, J. Submitted April 16, 1917. (Docket No. 56.) Decided July 26, 1917.

Assumpsit by Hannah M. Chaffee against Laila M. Chaffee upon a bond. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Lombard, Hext & Washburn,* for appellant.

*Roy M. Watkins* (*H. Monroe Dunham,* of counsel), for appellee.

MOORE, J. Defendant is the widow of Guy W. Chaffee, who died August 1, 1913. Plaintiff is his mother.

It is the claim of plaintiff that deceased left an estate of the actual value of $100,000 or more. This action is based on a claim that a compromise was made between the parties hereto, resulting in the giving of a bond by defendant to plaintiff conditioned on the payment of $50 per month to plaintiff during her lifetime, subject to certain modifications. Defendant concedes the giving of the bond and made payments thereon, but later refused to make further payments on the ground of failure of consideration. The trial court directed a verdict for defendant, holding the bond was without consideration. The sole question is: Should there have been a directed verdict?

Plaintiff claims to be a legatee under a will which she claimed had been left by her deceased son. Defendant claimed the will had been revoked by deceased. For 15 years prior to his death Guy Chaffee contributed largely to the support of his mother. She had been told by Guy, and it was a matter of common repute among members of the family up to the time of his death, that he had made a will wherein he had made a provision of $10,000 for plaintiff. Deceased had told Burt Chaffee and two brothers and a sister of plaintiff that he had provided a legacy of $10,000 for his mother by will. Guy Chaffee died in Chicago, where he had been taken for treatment five days before his death. On the train coming home from Chicago, the defendant, while in conversation with deceased's sister, made the statement that there was no will. Burt Chaffee, a son of the plaintiff, had several talks with defendant about the will. During these talks he was acting on behalf of plaintiff. Both plaintiff and Burt Chaffee testified that they then believed, and still believe, that the will was then in existence. During these talks with defendant, Burt Chaffee made the claim that there was a will having a provision in it of $10,000 for plaintiff. Defendant claimed that deceased had stated to her shortly before his death

that he had destroyed his will, but had requested defendant to provide for plaintiff in a manner she stated. In order to satisfy plaintiff, defendant offered to make provision for plaintiff in writing in accordance with the request made of her by her husband, as claimed by her. Burt Chaffee then went to his mother and communicated defendant's offer, which at first was rejected. But later, after advising with Burt, plaintiff accepted the proposition. During these negotiations, the testimony discloses, it was talked between Burt and defendant that the acceptance of the bond would be a release of any claim that plaintiff had under any alleged will that she claimed was then in existence. Plaintiff also so understood the matter.

The question involved is simply: Was there sufficient evidence of a consideration for defendant's agreement? Or, stated otherwise: Was there evidence to go to the jury on the question of a compromise and settlement of a claim which was in dispute between the parties, and made in good faith by plaintiff?

In 5 Ruling Case Law, p. 876, it is said:

"Compromise may be defined to be any agreement or arrangement by which, in consideration of mutual concessions, a controversy is terminated. The word applies equally to controversies in court or out of court. Mere abandonment of one's claims is not a compromise, but abandonment may constitute the consideration for which the other party either concedes some right, or parts with something, or sustains some loss or inconvenience, and in that event there is a compromise."

On page 877 the following appears:

"The compromise of any matter is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy. It has been said that the only elements necessary to a valid agreement of compromise are the reality of the claim made and the *bona fides* of the compromise; and a dispute must have existed between the parties as to their respective rights. If the parties act in good

faith, even where they know all the facts, and there is a promise without legal liability to base it on, the courts hesitate to disturb the agreements of parties on any assumption that an advantage which they have obtained, and conceive to be worth paying for, is not considered valuable."

At page 878 it is said:

"It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims, and the nature or extent of the rights of each should not be nicely scrutinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties. The consideration for such agreements is not only valuable, but highly meritorious. They are encouraged, because they promote peace, and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement."

At page 879:

"In order to effect a compromise there must be a definite proposition and an acceptance. As a question of law it does not matter from whom the proposition of settlement comes; if one is made and accepted, it constitutes a contract, and in the absence of fraud it is binding on both parties."

At pages 880 and 881 it is said:

"The cases establish the position that in equity the termination of family controversies furnishes a sufficient consideration to support agreements for such purpose, and that its powers will be fully and readily used to enforce them. Family arrangements extend and apply, not merely to cases in which arrangements are made between members of a family for the preservation of its peace, but to cases in which arrangements are made between them for the preservation of its property; it being a general principle that a voluntary conveyance, made with a view to a family settlement, is such a conveyance as the law will effectuate. In cases relating to the adjustment of family disputes,

where the motive is to preserve the honor or peace of the family, or the family property, the courts will not closely scrutinize the consideration, and will, if possible, decree performance of all reasonable settlements, even though they may at times rest on grounds which would not have been satisfactory if the transaction had occurred between mere strangers. * * *

"A doubtful or disputed claim, sufficient to constitute a good consideration for an executory contract of compromise has been defined as one honestly and in good faith asserted, arising from a state of facts upon which a cause of action can be predicated, with the reasonable belief on the part of the party asserting it that he has a fair chance of sustaining his claim, and concerning which an honest controversy may arise, although in fact the claim may be wholly unfounded."

See, also, *Weed* v. *Terry*, 2 Doug. 344 (45 Am. Dec. 257); *Van Dyke* v. *Davis*, 2 Mich. 145; *Bull* v. *Hepworth*, 159 Mich. 662 (124 N. W. 569); *Stevens* v. *Utilities Co.*, 189 Mich. 203 (155 N. W. 402), and *Hoey* v. *Ross*, 189 Mich. 193 (155 N. W. 375).

In the instant case plaintiff was claiming there was a will in existence that entitled her to $10,000 out of the estate of the husband of defendant. This was denied by defendant, basing her denial upon the assertion that her husband had told her he had revoked or destroyed the will, but wanted her to make provision for the mother which she expressed to the son, who was acting for the mother, a willingness to do. It is apparent that, if the mother and the daughter-in-law acted upon their beliefs, it might result in litigation which would greatly disturb the peace of the family, and might also have a tendency to affect the honor of some members of the family. The case presented questions of fact for a jury under proper instructions.

Judgment is reversed, and a new trial is ordered.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.