# STATE OF MICHIGAN

# COURT OF APPEALS

HAYES TOWNSHIP,

        Plaintiff-Appellee,

v

ROBERT FOWLER and BRIGITTE FOWLER,

        Defendants-Appellants.

UNPUBLISHED
May 14, 2015

No.  320530
Charlevoix Circuit Court
LC No.  13-055824-CE

Before:  BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

Defendants appeal by right the trial court's order granting plaintiff summary disposition, denying defendants' motion for summary disposition and granting plaintiff injunctive relief by enforcing the terms of a 1995 agreement and a 2000 quitclaim deed by which defendants' predecessors in title conveyed the disputed property to plaintiff. Defendants also appeal the trial court's ruling upholding the validity of a 2006 consent judgment that incorporated the 1995 agreement and amended the plat of Pine Point in Charlevoix County by vacating the portion designated as Beach Drive. Defendants argue plaintiff's complaint was barred by res judicata, the 1995 agreement and 2000 quitclaim deed could not create property rights in plaintiff, and the 2006 judgment was void based on the failure to timely file an amended plat. For the reasons set forth within, we conclude these arguments lack merit. Consequently, we affirm.

## I. FACTS AND PROCEEDINGS

The pertinent underlying facts in this case are not disputed. Defendants' predecessor in title, collectively referred to as the Darntons, owned Lots 2, 3, and 4 of Block 12 of the plat of Pine Point. The Darnton lots abutted Beach Drive, which is situated along the shore of Lake Charlevoix. For many years, the Darntons claimed ownership of that portion of Beach Drive adjacent to their lots on the bases that its dedication as a public street was never accepted by any public authority or alternatively was abandoned by the government and that their long-term use and exclusive possession of the property resulted in adverse possession.

In 1968, the Darntons brought an action for a declaratory judgment in the circuit court against Hayes Township, the Charlevoix County Road Commission, and the Auditor General of Michigan. The complaint alleged that "Beach Drive . . . alleys as platted [had] never been formally accepted for streets or alleys; or that, in the alternative, the said streets and alleys were abandoned by the municipal government." *Darnton v Hayes Twp*, 22 Mich App 575, 577; 177

NW2d 706 (1970). The trial court in that case granted the defendants' motion to dismiss, without prejudice, on the basis that "the provisions of the statute known as the Subdivision Control Act[1] outlines the procedure to be followed instead of the provisions of GCR 1963, 521, known as the Declaratory Judgment Procedure." *Darnton*, 22 Mich App at 577. On appeal, this Court affirmed the trial court, ruling "that in order to fully and adequately protect all of the abutting land owners, all of the land owners within the plat, and the public at large, the Subdivision Control Act is the preferable means for proceeding, in this case." *Id*. at 580-581. Consequently, the Court held that the trial court's dismissal of the Darntons' action was not an abuse of discretion. *Id*. at 581.

The Darntons did not initiate an action under the Subdivision Control Act. But they continued to assert that they were riparian owners of the disputed Beach Drive property on the bases of abandonment of the public right of way and their long-term use and exclusive possession of the property. Hayes Township also continued to dispute the Darntons' claims and asserted an interest in the property as a public park. The Darntons and Hayes Township subsequently entered an agreement on August 19, 1995, resolving their competing claims to the Beach Drive property. In the agreement, Hayes Township acknowledged the Darntons' claim to ownership of the disputed property, and the Darntons agreed to quit claim their interest in the property to Hayes Township subject to several conditions and reservations. The agreement divided the disputed property into three portions: (1) a natural area, (2) a beach area, and (3) the Darnton parcel. Over a portion of the Darnton parcel, the agreement reserved to the Darntons a permanent easement to Lake Charlevoix. Over the other portion of the Darnton parcel, the agreement reserved only a lifetime easement that would also terminate if the Darntons sold or otherwise terminated their interest in the Darnton lots. The 1995 agreement provided that it "shall be binding upon and inure to the benefit of the parties and their respective heirs, successors and assigns." The agreement was recorded in the office of the Charlevoix County Register of Deeds on September 11, 1995. In December 2000, the Darntons executed a quitclaim deed to plaintiff that incorporated the 1995 agreement; it was recorded June 4, 2001.

In 2005, the Darntons' daughter, Mary Jane Oliver, individually and as the personal representative of her mother's estate, brought an action under the Land Division Act (LDA), MCL 560.101 *et seq*., to, among other things, vacate portions of the Pine Point plat consistent with the 1995 agreement. See MCL 560.221 ("The circuit court may, as provided in sections 222 to 229 vacate, correct, or revise all or a part of a recorded plat.") A consent judgment was entered on August 30, 2006, and an amended consent judgment entered on October 20, 2006. With respect to the property disputed in this case, the amended judgment vacated Beach Drive and awarded the fee in the vacated property to the Darntons and Hayes Township according to the parties' 1995 agreement, which was specifically ratified and attached as exhibit "C" to the

---

[1] The Subdivision Control Act, 1967 PA 288, became effective January 1, 1968. The Legislature renamed it the Land Division Act, effective March 31, 1997. 1996 PA 591; See MCL 560.101.

judgment. The October 20, 2006, consent judgment was recorded in the office of the Charlevoix County Register of Deeds on October 23, 2006. See MCL 560.228.[2]

The amended consent judgment also contains a requirement, on which defendants rely, that plaintiffs prepare and file an amended plat according to the terms of the LDA. Paragraph 12 of the amended consent judgment states that the plaintiffs "must prepare and file, within 90 days of this Judgment's entry, an amended plat" of the various portions of the plat that had been vacated "in accordance with MCL 560.229 and this Judgment." Paragraph 15 of the amended consent judgment states that "this Judgment will be declared null and void *NUNC PRO TUNC* should the amended plat not be prepared and filed as required by this Judgment and by the requirements of MCL 560.229[3] within 90 days from entry of this Judgment." An amended partial plat in accordance with the judgment was prepared on or about May 8, 2007, and recorded in the office of the Charlevoix County Register of Deeds on May 23, 2007.

On December 14, 2011, Mary Jane Oliver, individually and as the personal representative of her mother's estate, conveyed the Darnton lots to defendants, Robert Fowler and Bridgette Fowler. The warranty deed also conveyed the permanent easement that the Darntons had reserved pursuant to the 1995 agreement with Hayes Township; the deed specifically refers by liber and page to the recorded 1995 agreement. At the time of this transaction, a dock was still situated on that portion of the Darnton parcel under the 1995 agreement over which the Darntons had reserved only a lifetime easement, which would terminate when the Darntons sold or otherwise terminated their interest in the Darnton lots. Steve Andreae, the real estate agent facilitating the sale of the Darnton lots, advised the Fowlers before the conveyance of the property that the existing dock would have to be relocated to the permanent easement over the Darnton parcel. The Fowlers did not recognize the legitimacy of the 1995 agreement, the 2000 quitclaim deed, or the 2006 consent judgment. On August 12, 2012, Hayes Township Zoning Administrator, Jonathan Schael, wrote to the Fowlers to advise them to move their dock and boats to within the permanent easement within two weeks; however, the Fowlers refused .

On August 16, 2013, plaintiff Hayes Township initiated this action for injunctive relief. The complaint set forth three counts: (1) to enforce the 2006 consent judgment, (2) for specific

---

[2] "Within 30 days after entry of judgment, for vacation, correction, or revision of a plat, plaintiff shall record the judgment in the office of the register of deeds. . . ." MCL 560.228.

[3] MCL 560.229(1) provides:

> If the court orders a plat to be vacated, corrected, or revised in whole or in part, the court shall also direct plaintiff to prepare, in the form required by this act for a final plat, either a new plat of the part of the subdivision affected by the judgment or a new plat of the entire subdivision if the court's judgment affects a major part of the subdivision.

The LDA nowhere provides a time limit within which an amended plat must be filed and recorded. The 2006 amended consent judgment was timely recorded three days after its entry at the office of the register of deeds. See MCL 560.228.

performance of the 1995 agreement, and (3) to quiet title under MCL 600.2932. The parties agreed that the underlying facts were not disputed and that the issues presented could be decided by the court on the parties' respective motions for summary disposition. The trial court heard arguments on the motions on January 31, 2014.

Relying on *Beach v Lima Twp*, 489 Mich 99; 802 NW2d 1 (2011), the trial court ruled from the bench that "substantive property rights in a platted subdivision can be created independent of the Land Division Act." Specifically, property rights "were created by deeds and agreements and a consent judgment . . . ." The trial court further ruled that the "Darnton agreement expressly provided that it was binding on successors and assigns which would include the defendants in this case, hence the so-called Temporary Easement was extinguished upon conveyance of the Darntons' lots to the defendants." With respect to the judgment's 90-day time limit within which to prepare and file an amended plat, the trial court ruled that voiding the judgment was not automatic. Rather, the trial court ruled that judicial action was required to declare the judgment void, "especially given the law's preference of some permanency and finality in real estate transactions . . . ."

The trial court also ruled that the Darntons would not have been able to challenge the consent judgment on the basis that they had failed to fulfill their duty under its terms. And, because the defendants were the successors and assigns of the Darntons, defendants were also unable to challenge that consent judgment based on their predecessor's failings.

The trial court also rejected, without explanation, defendants' argument regarding res judicata. Consequently, the trial court granted plaintiff's motion for summary disposition and denied defendants' motion. The court also granted plaintiff a permanent injunction and specific performance of the 1995 agreement. The trial court entered its order on February 14, 2014, granting plaintiff's motion for summary disposition, denying defendants' motion for summary disposition, and ordering removal of defendants' property from the temporary easement over the Darnton parcel. Defendants now appeal by right.

## II. ANALYSIS

### A. RES JUDICATA

#### 1. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(7) is reviewed de novo. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). Further, whether the doctrine of res judicata bars a claim is a question of law reviewed de novo on appeal. *Id*.

This Court also reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *West v Gen Motors Corp*, 469 Mich 177, 182-183; 665 NW2d 468 (2003). The trial court when deciding the motion and this Court on review must view the substantively admissible evidence submitted up to the time of the motion in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). Summary disposition is proper when no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. *West*, 469 Mich at 183.

## 2. DISCUSSION

In Michigan, res judicata applies to bar "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). Whether actions arise from the same transaction depends on the relationship of the facts in time, space, origin or motivation, and whether they form a convenient trial unit. *Id* at 125. The doctrine of res judicata bars a subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. at 121. For the res judicata to apply, the prior action must also have resulted in a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). The doctrine applies to both default and consent judgments. *Id*.; *Schwartz v City of Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991). But the doctrine of res judicata "does not bar a subsequent action between the same parties or their privies when the facts have changed or new facts have developed." *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 636 n 10; 808 NW2d 471 (2010), citing *Labor Council, Michigan Fraternal Order of Police v Detroit*, 207 Mich App 606, 608; 525 NW2d 509 (1994).

In this case, the prior action was decided on the merits; both actions involve the same parties or their privies, and the prior action resulted in a final decision. But the instant action could not have brought in the prior action. *Adair*, 470 Mich at 121. At the time of the prior action, the Darntons and Hayes Township were abiding by their 1995 agreement and incorporated its terms into the 2006 consent judgment. While the Darntons presumably maintained a dock on the portion of the Darnton parcel over which they held a lifetime easement, they were acting as permitted by the parties' agreement. Consequently, there was no basis at the time of the LDA action for Hayes Township to bring any counterclaim against defendants' privies, the Darntons. The Darntons conveyance of Lots 2, 3, and 4 of Block 12 of the plat of Pine Point to defendants, however, terminated their lifetime easement under the 1995 agreement and 2006 consent judgment. This action created new and changed circumstances, as did the Fowlers' refusal to abide by the agreement into which their predecessors had entered. Consequently, new facts and changed circumstances rendered res judicata inapplicable to plaintiff's claims in the instant case. *Bennett*, 289 Mich App at 636 n 10; *Labor Council*, 207 Mich App at 608.

Defendants' argument regarding res judicata is meritless.

### B. 1995 AGREEMENT AND 2000 QUITCLAIM DEED

### 1. STANDARD OF REVIEW

In addition to the standard of review for decisions on motions for summary disposition, questions of contract interpretation are reviewed de novo. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). Courts will enforce contracts according to their terms, giving the words used in the contract their plain and ordinary meanings. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). Unambiguous language in a contract reflects the parties' intent as a matter of law and will be enforced according to its terms. *Id.*; *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51-52; 664 NW2d 776 (2003).

## 2. DISCUSSION

Regardless of whether the 1995 agreement and 2000 quitclaim created marketable, record title in plaintiff to the disputed property, under the plain terms of the 1995 agreement and general contract principles, the agreement is binding on defendants. Therefore the trial court did not err by enforcing the agreement and permanently enjoining defendants from violating its terms. See *Reicher*, 283 Mich App at 664 ("We enforce contracts according to their terms, as a corollary to the parties['] liberty to enter into a contract."); *Burkhardt*, 260 Mich App at 656 ("An unambiguous contract must be enforced according to its terms.").

The 1995 agreement unambiguously provided that it "shall be binding upon and inure to the benefit of the parties and their respective heirs, successors and assigns." It is undisputed that defendants are the successors and assigns of the Darntons' interest in Lots 2, 3, and 4 of Block 12 of the plat of Pine Point and that the Darntons were parties to the 1995 agreement. It is also undisputed that the Darntons' deed of conveyance to defendants of the Darnton lots specifically referred to the 1995 agreement and conveyed to defendants only the permanent easement under the 1995 agreement. Thus, by the unambiguous language of the 1995 agreement the Darntons bound themselves and their successors and assigns, defendants, to its terms. Moreover, under general contract law, an assignee stands in the position of the assignor and possesses the same rights and is subject to the same defenses as the assignor. *Burkhardt*, 260 Mich App at 653-654; see also *Coventry Parkhomes Condo Assoc v Fed Nat'l Mtg Assoc*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012) ("It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor."). Consequently, defendants bound themselves to the terms of the 1995 agreement by accepting the conveyance of the Darnton lots and becoming the Darntons' successors in interest.

Defendants correctly observe that *Beach* held, consistent with other case law, that "[t]he creation, termination, and vacation of plats are controlled by the statutory authority of the LDA. Consequently, 'the exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat is a lawsuit filed pursuant to MCL 560.221 through 560.229.' " *Beach*, 489 Mich at 109, quoting *Martin v Beldean*, 469 Mich 541, 542-543; 677 NW2d 312 (2004). But defendants conflate marketable or record title with having a nonrecord title or interest in property. *Beach* explained that the latter may arise if the requirements of adverse possession are established, and if so, "the record owner's title is extinguished and the adverse possessor acquires 'legal title' to the property." *Beach*, 489 Mich at 106-107. But, "the title acquired by adverse possession is neither *record title nor marketable title* until the adverse possessor files a lawsuit and obtains a judicial decree." *Id*. at 107 (emphasis added). The question the *Beach* Court answered "no" was "whether a nonrecord property holder seeking to establish marketable title by proof of adverse possession must bring such an action under the LDA, rather than solely as an action to quiet title." *Id*. at 107, 117-118, 121.

In their appellate brief, defendants strongly imply that the Darntons' claim to the portion of Beach Drive at issue was valid both on the theory of adverse possession and because the public dedication was never accepted or alternatively was abandoned by the pertinent governmental entities. At oral argument on the parties' motions for summary disposition, defendants' counsel explicitly conceded the validity of the Darntons' claims. He further explained that after invalidating the 1995 agreement, the 2000 quitclaim deed, and the 2006

-6-

consent judgment, defendants intended to claim the disputed property as their own as the Darntons' successors. But the competing claims to the Beach Drive property by plaintiff and the Darntons would provide a valid basis for an agreement to resolve the dispute between them through a compromise agreement. "[T]he only elements necessary to a valid agreement of compromise are the reality of the claim made and the *bona fides* of the compromise; and a dispute must have existed between the parties as to their respective rights." *Chaffee v Chaffee*, 197 Mich 133, 135; 163 NW 879 (1917)(citation omitted). As plaintiff argues, courts encourage such settlements because they promote peace and will be upheld when there is no fraud and the parties have on equal terms adjusted their differences. *Id.* at 136; see also *Chouman v Home Owners Ins Co*, 293 Mich App 434, 438; 810 NW2d 88 (2011) ("voluntary and freely-negotiated compromises [are] encouraged"). In this case, the 1995 agreement between the Darntons and plaintiff was a valid compromise that by its plain terms and general contract principles is binding on defendants.

Because the 1995 agreement is binding on defendants as the successors in interest to the Darntons, the trial court properly granted plaintiff's motion for summary disposition and specifically enforced the agreement by granting plaintiff injunctive relief against defendants.

## C. THE 2006 AMENDED CONSENT JUDGMENT

### 1. STANDARD OF REVIEW

The de novo standard of review with respect to summary disposition and contract interpretation applies to this issue as well.

As a general rule, consent judgments will not be set aside or modified except for fraud or mutual mistake." *Trendell v Solomon*, 178 Mich App 365, 367; 443 NW2d 509 (1989). Once entered, a consent judgment has the full force and effect of a judgment entered after trial. *Id.* at 368. A trial court's decision regarding enforcement of a consent judgment is reviewed for an abuse of discretion, *id.* at 370, and will only be reversed when the court's decision is outside the range reasonable and principled outcomes, *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 421-422; 834 NW2d 878 (2013).

### 2. DISCUSSION

The trial court correctly ruled that the failure to comply with the 90-day time limit for preparing an amended plat rendered the judgment voidable, not automatically void. Furthermore, because the trial court also correctly ruled that defendants, as the successors and assigns of the Darntons, could not appropriate the Darntons' procedural default to collaterally attack the consent judgment, it did not abuse its discretion by enforcing the 2006 consent judgment. *C D Barnes Assoc*, 300 Mich App at 421-422; *Trendell*, 178 Mich App at 367, 370.

The wording "will be declared null and void" of paragraph 15 clearly indicates the necessity of future judicial action to invoke its penalty of voiding the judgment nunc pro tunc. This reading of paragraph 15 is consistent with the fact that the LDA does not have a time limit within which an amended plat must be filed following a judgment vacating, correcting, or revising all or a part of a recorded plat. MCL 560.221; MCL 560.229. The only statutory time limitation following such judicial action is found in MCL 560.228, which requires that "[w]ithin

30 days after entry of judgment, for vacation, correction, or revision of a plat, [the] plaintiff shall record the judgment in the office of the register of deeds." The amended judgment in this case was recorded three days after its entry, thus placing the public on notice that the plat of Pine Point had been revised and the substance of the revisions.

The trial court's interpretation of paragraph 15 of the amended consent judgment is also consistent with the general rule that while a judgment entered when a court lacks jurisdiction is void and may be collaterally attacked, *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 544; 260 NW 908 (1935), a judgment entered when a court possesses jurisdiction is voidable only on a proper motion or on appeal and may not be collaterally attacked, *id*. at 545. See also *Kim v JPMorgan Chase*, 493 Mich 98, 115-116; 825 NW2d 329 (2012), and *Abbott v Howard*, 182 Mich App 243, 247-248; 451 NW2d 597 (1990).

> Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked. [*Jackson City Bank & Trust Co,* 271 Mich at 545 (citation omitted).]

In this case, only a post-judgment procedural irregularity occurred with respect to a time frame that was not statutorily required and was cured before any proper action was taken to enforce its terms. No one was prejudiced by the irregularity, and the public was placed on notice by the timely recording of the judgment as required by MCL 560.228. Under these circumstances, the trial court properly ruled that the judgment would have been voidable at best on post-judgment motion but that the judgment was not automatically void.

In addition, the trial court correctly ruled that defendants, as the Darntons' privies, could not challenge the consent judgment on the basis of the Darntons' procedural failure. "It is elementary that one cannot appeal from a consent judgment, order or decree[.]" *Dora v Lesinski*, 351 Mich 579, 582; 88 NW2d 592 (1958). This is because a party cannot complain regarding his or her own errors. *Id*. There is no evidence that the consent judgment in this case resulted from fraud or mutual mistake. See *Trendell*, 178 Mich App at 367 ("consent judgments will not be set aside or modified except for fraud or mutual mistake"). Therefore, the Darntons could not attack the consent judgment or appeal from it. *Long v Minchella*, 343 Mich 373, 377-378; 72 NW2d 113 (1955); *Sauer*, 338 Mich at 681. Further, because defendants are the assignees of the Darntons, defendants have no more rights than the Darntons possessed and are subject to the same defenses that could have been asserted against the Darntons. See *Parkhomes Condo Assoc*, 298 Mich App at 256-257; *Burkhardt*, 260 Mich App at 653-654. Consequently, defendants may not attack the consent judgment on the basis of their predecessor's procedural deficiency.

Moreover, assuming arguendo that the Darntons possessed the right to move the trial court for relief from the consent judgment after failing to meet the 90-day time requirement, the Darntons by their actions of preparing and filing the amended plat, albeit late, forever waived any right to attack the judgment on basis of their own tardiness in filing the amended plat. Waiver is " '[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage . . . . The party alleged to have waived a right must have had both knowledge

of the existing right and the intention of forgoing it.' " *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011), quoting Black's Law Dictionary (9th ed). The *Reed* Court discussed at length the concept of implied waiver by conduct. "An 'implied waiver' is defined as '[a] waiver evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive.' " *Id.* at 177, quoting Black's Law Dictionary (9th ed), p 1717. "Proof of express words is not necessary, but the waiver may be shown by circumstances or by a course of acts and conduct which amounts to an estoppel." *Klas v Pearce Hardware & Furniture Co*, 202 Mich 334, 339; 168 NW 425 (1918)(citation omitted).

In the present case, the Darntons instead of seeking to invalidate the consent judgment on the basis of failing to timely file the amended plat, fulfilled their obligation and belatedly filed the amended plat. The Darntons' actions clearly manifested their intent to ratify the consent judgment and waived any claim that it should "be declared null and void." As the Darntons' successors and assigns, defendants are bound by this waiver. *Parkhomes Condo Assoc*, 298 Mich App at 256-257; *Burkhardt*, 260 Mich App at 653-654.

For all the foregoing reasons, the trial court correctly ruled that defendants as the Darntons' successors and assigns could not use the procedural default of the latter to collaterally attack the consent judgment. The trial court did not abuse its discretion by enforcing the 2006 consent judgment. *C D Barnes Assoc*, 300 Mich App at 421-422.

## D. CONCLUSION

The 1995 agreement, the 2000 quitclaim deed, and the 2006 amended consent judgment are binding on defendants as the successors in interest to the Darntons. Further, we affirm the trial court's ruling that the Darntons' failure to timely file an amended plat rendered the consent judgment at best voidable. The trial court also correctly ruled that defendants could not use the Darntons' post-judgment procedural deficiency to collaterally attack the consent judgment. Defendants are bound by the consent judgment as the Darntons' privies. In sum, the trial court properly granted plaintiff's summary disposition and injunctive relief to specifically enforce the 1995 agreement and the 2006 consent judgment.

We affirm. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

-9-