KLAS v. PEARCE HARDWARE & FURNITURE CO.

CONTRACTS—BUILDING CONTRACTS—EXTRAS—WAIVER.

In an action for work and labor performed as an extra, where the provisions of the written contract that permission for extras should be in writing were not complied with, testimony that when defendant's agent ordered extra work to be done plaintiff called his attention to the requirement of the contract, and he answered that there was no necessity of going back to the contract on that point, that they were not children, that they were willing to pay for any work they ordered, and that in fact certain of the extra work had been paid for, *held*, to present a question for the jury as to whether the provisions of the contract were waived, and the court below was in error in directing a verdict for defendant. OSTRANDER, C. J., dissenting.

Error to Houghton; O'Brien, J. Submitted April 2, 1918. (Docket No. 6.) Decided July 18, 1918.

Assumpsit by John Klas against the Pearce Hardware & Furniture Company for work and labor. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

See note in 48 L. R. A. (N. S.) 565.

*B. H. T. Burritt,* for appellant.

*Willard E. Gray,* for appellee.

MOORE, J. The questions involved in this litigation are so clearly stated by the circuit judge in his direction to the jury that we quote:

"Gentlemen of the jury, the plaintiff has brought this case against the defendant to recover for certain extra work and labor which he claims to be performed for the defendant in remodeling and constructing certain buildings in the village of Lake Linden.

"The plaintiff's claim in substance is, that on or about the 4th day of October, 1915, he entered into a contract in writing with the said defendant for the remodeling and construction of certain buildings, the property of said defendant; that at the time the contract was entered into certain specifications were drawn and agreed to and made a part of the contract; that under the contract the defendant was to furnish the materials used in remodeling and erecting said buildings, and the plaintiff was to furnish all labor and complete the buildings according to the contract and specifications, and was to receive therefor the sum of $2,469. The plaintiff has received the full amount due him under the contract and he makes no claim for any balance due on the original contract, but brings this action to recover for certain additional work and labor which he claims to have performed and furnished, which was extra, outside of and in addition to that agreed upon in the original contract and specifications.

"The original contract, which is in writing provides among other things that any additional work not specified for may, after a written permission by said party of the first part be added to said contract price, which charge will be on an actual labor cost, plus a commission of 21 per cent.

"There is no claim on the part of the plaintiff that there was any written permission given him by the defendant by either one of its agents, Mr. Chester Pearce or Mr. Ransom Pearce, for doing extra work done during the progress of the work on that building. According to that clause in the contract, before the plaintiff could charge for any extra work at all, it was

his duty to secure the written permission to do that work from some one in authority representing the Pearce Hardware Company, otherwise he could not recover in law for that extra work. But it is the claim of the plaintiff that during the progress of the work he was called upon to do certain extra work and make certain changes and alterations, and that he called the attention of Mr. Chester Pearce to the fact that there was a clause requiring a permission to do extra work to be given in writing, and that Mr. Pearce said that there was no necessity of going back to the contract on that point, that they were not children, they were willing to pay for any work they would order, and that they had had thousands of dollars worth of work done for them and were willing to pay for anything they ordered. It was also admitted in the evidence that Mr. Ransom Pearce said, "I want you to send me a bill of the extra work you do, every month," and that the plaintiff sent bill every six weeks; that there was no objection made to those bills. And the evidence also shows, without any dispute, that the defendant has paid more than the amount of the original contract; has paid $131.00 more than the original contract, and has also given the plaintiff credit for a certain hardware bill amounting to $122 and some cents. The payment made by the defendant of the $131 above the contract price was unquestionably paid on extras and was unquestionably paid for a bill of extras which had previously been rendered by the plaintiff.

"The defendant claims that in the state of the record and in the state of the evidence there is no question for the jury as to the waiver of the clause in the written contract relating to the written authorization necessary before extras could be charged for. That the conversation had between the plaintiff and Chester Pearce or between the plaintiff and Ransom Pearce, as the case may be (if there was more than one conversation), related to particular pieces of work, and was not a sweeping and general waiver of the clause in the contract requiring written authorization for extras before being charged for them, and it is the claim on the part of the plaintiff, however, that all of the circumstances taken together indicate that both parties understood that that clause would be waived—that is,

that the defendant intended to waive it, and the plaintiff relied upon it being waived, and therefore did not insist upon getting authorization for the extra work he had done. * * *

"I do not believe that the defendant ever intentionally waived that clause in the contract. I recognize perhaps, that there is a certain injustice, that the plaintiff went on and performed this extra work voluntarily for the benefit of the defendant, and not able to recover for it. But the plaintiff is an intelligent man; he knew the clause was in the contract, and it was talked about before the contract was entered into, and if he did any extra work on his own motion, if he did some extras he must be regarded as a volunteer, and he cannot recover. * * *

"This is not a court of arbitration. If I were sitting as a court of arbitration I should probably allow the whole bill. But this is not a court of arbitration; this is a court of law. The parties must stand on their own rights. It is not a question of give and take; they must be held down to legal rules and to waive a clause in a legal contract it must be the intentional relinquishment of a known right. Now, was there any intentional relinquishment on the part of the defendant of this right to insist on a specific written authority for those extras? I am compelled by a careful review of the evidence to say no, that there is no such intention shown."

The judge directed a verdict for the defendant. The case is brought here by writ of error.

The questions involved are:

1. Did the defendant, by its officers and agents, Ransom Pearce and Chester Pearce, expressly or impliedly waive the condition in the contract providing for written permission to do extra work?

2. Was the question of waiver a question of fact to be submitted to the jury?

In addition to what was said by the trial judge it may be well to call attention to some details of the testimony. It is not in dispute that Ransom Pearce was manager of the defendant and authorized to make

contracts for it.  It is difficult to harmonize the testimony of the plaintiff and the two Pearces.  On his direct examination Ransom Pearce testified:

"I never had any conversation with Mr. Klas relative to the waiving of the contract providing for extras."

On his cross-examination the following appears in part:

"I do remember how the first extra work come about. I ordered Mr. Klas to do extra work.  I do not remember when I ordered the first extra work done.  It was more than three weeks after Mr. Klas started on the job. * * *
"At the time I gave him the check for $200 on the 29th of March, we owed him nothing on the contract. We had paid the original contract in full.  At that time I recognized there was some extra work done by Mr. Klas.  On the 10th day of June I paid him an additional hundred dollars, and at that time I recognized that there was some extra work done by Mr. Klas.  I agreed to some extra work in paying the checks.  I did not agree to certain extra work.  I ordered Mr. Klas to go on and do extra work.  At the time I ordered this extra work done I understood the contract.  I knew it provided that I should give him written permission.  I ordered the work done but I did not give him written permission.  Because the cases were so very few of extras that were authorized, I did not consider it necessary."

Chester Pearce was a witness.  In his direct examination the following appears:

"I am vice-president of the Pearce Hardware & Furniture Company.  Mr. Ransom Pearce is manager.  He had authority to contract for the firm.  I have no authority to contract.  I had a conversation with Mr. Klas in reference to certain changes in which I told him to go ahead with the work. * * * I think I said something like Mr. Dion said here on the stand that we were no kids or something of that sort, and anything we authorized to do as an extra, we would pay for it."

On the cross-examination he testified in part:

"I had a good deal to say concerning how the building should be erected. I always consulted my brother on the matter. * * * As my brother testified he was quite busy and turned a good deal of the work over to me, overseeing the job, etc. I ofttimes gave Mr. Klas his orders as to what I wanted done in certain cases. I always consulted my brother about things, and when I considered making a change, or Mr. Klas recommended one, I took it up with him, we talked it over, decided and went ahead. Either my brother or myself would give Mr. Klas instructions. * * * Whenever a change was made either at the suggestion of Mr. Klas or at my suggestion, I talked it over with my brother and we agreed to make the change, or not make it as the case may be."

Counsel for the appellee insist the trial court was right, citing many cases and emphasizing the case of *Davis* v. *Hospital Ass'n,* 121 Wis. 579. While apparently there is a lack of harmony in the authorities, the disagreement is more apparent than real, when the facts of each case are understood.

The law has been stated as follows:

"Waiver is a matter of fact to be shown by the evidence. It may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom. It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive. Proof of express words is not necessary, but the waiver may be shown by circumstances or by a course of acts and conduct which amounts to an estoppel." 40 Cyc. p. 267.

"Waiver is a mixed question of law and fact. It is the duty of the court to charge and define the law applicable to waiver, but it is the province of the jury to say whether the facts of the particular case constitute waiver as defined by the court." 40 Cyc. p. 270.

"A provision in the contract that all extra work shall

be ordered by the architect in writing may be waived by the parties, the question whether there has been such a waiver usually being one of fact, depending on the facts and the circumstances of the particular case. Thus such waiver may be implied where the order and the extra work are known to the owner, and not objected to by him, where the charge for extra work is agreed to by the owner, or where the extra work is orally ordered by the owner or called for by the agent in the plans and specifications; or the owner by his conduct may be estopped from setting up such provision as a defense." 9 Corpus Juris, p. 846.

See *International Fair & Exposition Ass'n* v. *Walker*, 88 Mich. 89; *Wenzel* v. *Kieruj*, 184 Mich. 284; *Maurer* v. *School District*, 186 Mich. 223.

Applying these authorities to the instant case, we think it must be said there was a case for the jury.

Judgment is reversed and a new trial ordered, with costs in favor of the plaintiff.

BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred with MOORE, J.

OSTRANDER, C. J. For reasons stated by the circuit judge and recited in this opinion I am of opinion that the judgment should be affirmed.