REED ESTATE v REED

Docket No. 297528. Submitted June 14, 2011, at Grand Rapids. Decided
      June 23, 2011, at 9:00 a.m. Leave to appeal denied, 490 Mich 912.
   The estate of Daren R. Reed moved in the Muskegon Circuit Court to
   recover the decedent's 401(k) proceeds from the designated ben-
   eficiary, his ex-wife Mae Lynn Reed (Reed), pursuant to a waiver
   provision in the Reeds' divorce judgment that awarded the parties
   their respective retirement benefits free from any claim by the
   other. Reed argued that this waiver provision was preempted by
   the Employee Retirement Income Security Act (ERISA), 29 USC
   1001 *et seq.*, and was otherwise invalid because the divorce
   judgment, which had been entered by default, did not represent a
   knowing relinquishment of her rights. The court, Gregory C.
   Pittman, J., granted the motion, and Reed appealed.
      The Court of Appeals *held*:
      1. The resolution of this case was not contingent on whether
   ERISA preempted state law. Once the proceeds from a plan have
   been distributed to the designated beneficiary, ERISA is no longer
   implicated. Therefore, whether the proceeds may be retained
   despite the terms of the divorce judgment is an issue governed
   exclusively by state law.
      2. The provision in the divorce judgment awarding the dece-
   dent his retirement benefits free from any claim by Reed consti-
   tuted a valid waiver of Reed's rights as the designated beneficiary.
   A waiver is the voluntary, intentional relinquishment of a known
   right that may be shown by express declarations or by declarations
   that manifest the parties' intent and purpose. An implied waiver
   may be established by a party's decisive, unequivocal conduct from
   which an intent to waive may be reasonably inferred. While a
   waiver generally will not be implied from a party's mere silence, a
   waiver may be implied from silence if the party had an obligation
   to speak. In this case, Reed was obligated to speak in the divorce
   action by filing an answer or contesting the entry of the default
   and subsequent judgment. Her consistent failure to do so, despite
   having received notice of the proceedings and their intended

outcome, as well as copies of all documents filed, constituted a waiver implied by conduct inconsistent with an intent to assert her rights.

3. The fact that the divorce judgment was entered by default was irrelevant to whether its waiver provision was enforceable. Default judgments are conclusive adjudications and are as binding on the litigants as judgments obtained following a trial or settlement.

Affirmed.

1. DIVORCE — JUDGMENTS — PREEMPTION OF STATE LAW — RETIREMENT PLANS — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

The determination of whether the designated beneficiary of a retirement plan may retain its proceeds despite the contrary terms of a divorce judgment is governed exclusively by state law; once the proceeds from a retirement plan have been distributed to the designated beneficiary, the federal Employee Retirement Income Security Act is no longer implicated (29 USC 1001 *et seq.*).

2. DIVORCE — JUDGMENTS — DEFAULT JUDGMENTS — WAIVER PROVISIONS — IMPLIED WAIVERS.

A waiver is the voluntary, intentional relinquishment of a known right that may be shown by express declarations or by declarations that manifest the parties' intent and purpose; an implied waiver may be established by a party's decisive, unequivocal conduct from which an intent to waive may be reasonably inferred; while a waiver generally will not be implied from a party's mere silence, a waiver may be implied from silence if the party had an obligation to speak; a waiver of rights contained in a default divorce judgment may be implied when a party who received notice of the proceedings and their intended outcome failed to file an answer or contest the entry of the default or subsequent judgment.

3. DIVORCE — JUDGMENTS — DEFAULT JUDGMENTS — WAIVER PROVISIONS.

The fact that a divorce judgment was entered by default is irrelevant to whether a waiver provision contained in the judgment is enforceable; default judgments are conclusive adjudications and are as binding on the litigants as judgments obtained following a trial or settlement.

*Parmenter O'Toole* (by *Rachel L. Terpstra*) for the estate of Daren R. Reed.

*Robert J. Riley* for Mae Lynn Reed.

Before: TALBOT, P.J., and GLEICHER and M. J. KELLY, JJ.

TALBOT, P.J. Mae Lynn Reed (Reed) challenges the enforcement of the pension benefits waiver provision in her divorce judgment. Specifically, Reed contests the trial court's order that she turn over the proceeds she received from the retirement account's plan administrator to the estate of her late ex-husband; Daren Reed (the decedent). We affirm.

The following undisputed facts are provided for both background and perspective. The parties were married on August 23, 2002. The complaint for divorce filed by Daren Reed indicated the parties ceased their cohabitation in November 2003. The summons was issued and the divorce complaint was filed on July 30, 2007. The complaint indicated that the parties had no issue of the marriage and had acquired no real property. Reed was personally served with the summons and complaint on August 1, 2007. The trial court mailed a notice to the parties on August 15, 2007, to appear for a nonjury trial in this matter on November 5, 2007. Reed never filed an answer or appearance, and a proposed divorce judgment, affidavit, default, entry of default, and notice of hearing were forwarded to her on October 19, 2007. After taking proofs the trial court entered the divorce judgment on November 5, 2007, and a copy of the signed judgment was forwarded to Reed on November 7, 2007. The lower court record demonstrates, and the parties do not dispute, that Reed did not appear or respond to any pleadings filed in the divorce action and took no steps to have the judgment set aside following its entry.

The relevant portions of the divorce judgment are:

IT IS FURTHER ORDERED AND ADJUDGED that both the Plaintiff and the Defendant herein shall each be and they are hereby awarded their respective pension plans, [individual retirement accounts], annuities, etc., if any, free and clear from any claim by the other.

IT IS FURTHER ORDERED AND ADJUDGED that all the rights of either party in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the other party in which he or she has been named or designated a beneficiary, or in which he or she became designated by assignment or change of beneficiary, during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective, shall be extinguished and any benefits shall hereupon become payable to the minor children of the parties. As long as they are under the age of 18 years, such designation will be irrevocable.

It shall be the responsibility of each party to make the appropriate changes in beneficiary designation of any polices on his/her life to effectuate the intent of this judgment in light of the recent conflict in the Federal District Court decisions regarding the effect of divorce on beneficiary designation.

Daren Reed died on September 9, 2009, without having effectuated a change of beneficiary form with his employer's 401(k) plan administrator. Subsequently, Reed filed a claim and was paid the decedent's retirement benefits of approximately $150,000 as the designated beneficiary. When the decedent's adult offspring learned of the distribution, the estate initiated the present action seeking to enforce the divorce judgment and recover any proceeds obtained by Reed.

In the lower court proceedings, neither party challenged the propriety of the distribution of the funds to Reed by the plan administrator in accordance with the

Employee Retirement Income Security Act (ERISA)[1]
based on Reed's being the designated beneficiary on the
account. Focus of the litigation centered on whether
Reed had the right to retain the proceeds given the
waiver provision contained in the divorce judgment.
The estate argued that ERISA was not implicated and
did not challenge the distribution by the plan adminis-
trator. The estate contended that state law governed
enforcement of the divorce judgment, including the
pension waiver provision and the validity of the waiver.
The estate also argued that Reed should be estopped
from challenging the waiver provision and that to
permit Reed to retain the proceeds would be inequitable
because it would constitute an unjust enrichment as a
windfall.

Reed responded by asserting that ERISA preempted
state law and that she was entitled to receive and retain
the distribution. In making this assertion, Reed argued
that since the divorce judgment was entered by default,
the waiver provision was invalid or unenforceable be-
cause it did not constitute an overt act or a knowing
waiver of her rights. In ordering Reed to relinquish the
funds to the estate, the trial court explained, in perti-
nent part:

> The argument has been put forward that either Mr.
> Reed did not intend what was indicated in the default
> Judgment of Divorce, and I don't buy that at all. I think it's
> pretty clear that Mr. Reed did not intend that—or did not
> change his mind about the fact that Ms. Reed was not to be
> the beneficiary of any of those type of instruments.
>
> * * *
>
> [S]imply by virtue of the fact that the judgment that was
> entered in this divorce severing this marriage was a default

---

[1] 29 USC 1001 *et seq.*

judgment, does not diminish the effect of the judgment that was entered. . . . [T]he default judgment has as much faith, credit, and effect as it would if it were a judgment that was based upon the consent of the parties, or based upon the opinion that would have been written by the Court had it been a trial issue. . . . Ms. Reed simply by not following through, or answering, pleading, or otherwise defending as recognized by law here; and therefore a default judgment being entered, in effect did make a decision. She did participate to the extent that she chose not to participate.

There is no two-tiered system of judgments of divorce in this state of Michigan, or different levels of effect, or seriousness, or import, or any other term that you would place on it to show that one judgment has a different— should be taken in a different light than the other judgment. The full faith and credit of the Court is indicated through its judgment, whether it would be default, consent, or the Court rendered opinion. But never the less the provisions of that judgment should be given their full faith—should be given their full affect [sic] accordingly.

This appeal ensued.

"Waiver is a mixed question of law and fact. The definition of a waiver is a question of law, but whether the facts of a particular case constitute a waiver is a question of fact."[2] We review for clear error a trial court's findings of fact and review de novo its conclusions of law.[3] We also review a trial court's equitable decisions de novo,[4] but the underlying factual findings remain subject to review for clear error. "A finding is clearly erroneous when, although there is evidence to

---

[2] *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006) (citation omitted).

[3] *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

[4] *Wengel v Wengel*, 270 Mich App 86, 91; 714 NW2d 371 (2006).

support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed."[5]

At the outset, Reed attempts to obfuscate the issue by suggesting that it is more complicated than it appears and implying that resolution of the issue is contingent on the federal-law preemption by ERISA. Neither is true, particularly given the fact that the parties do not contest the propriety of the distribution of the funds by the plan administrator, merely Reed's right to retain them. In this instance, preemption is not "the ultimate issue . . . ."[6] Rather, "the issue presented is most appropriately resolved under principles of waiver . . . ."[7] As discussed by this Court: " 'Even where ERISA preempts state law with respect to determining beneficiary status under an ERISA-regulated benefits plan, ERISA does not preempt an explicit waiver of interest by a nonparticipant beneficiary of such a plan.' "[8] It is generally accepted by a majority of courts "that waivers of beneficiary rights are possible under ERISA-governed plans . . . because 'ERISA is silent on the issue of what constitutes a valid waiver of interest,' the courts must turn to federal common law and state law to fill the gap."[9] The issue to be addressed is "whether there is proof of a specific termination of the rights in question or, stated differently, whether a waiver by a designated beneficiary of an ERISA-regulated benefits plan was explicit, voluntary, and made in good faith."[10] Specifically,

---

[5] *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

[6] *MacInnes v MacInnes*, 260 Mich App 280, 285; 677 NW2d 889 (2004).

[7] *Id.* at 286.

[8] *Id.*, quoting *Melton v Melton*, 324 F3d 941, 945 (CA 7, 2003).

[9] *MacInnes*, 260 Mich App at 287, quoting *Melton*, 324 F3d at 945.

[10] *MacInnes*, 260 Mich App at 287.

when we are evaluating whether the waiver is effective in a given case, we are more concerned with whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question than with any magic language contained in the waiver itself. Michigan courts have defined "waiver" as the voluntary and intentional relinquishment of a known right.[11]

This is consistent with rulings by our Supreme Court in similar cases that held the issue of "whether plaintiff, having lawfully renounced her interest in the insurance proceeds in a binding judgment of divorce, may lawfully retain them" to be "governed exclusively by Michigan law . . . ."[12] In other words:

[W]hile a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds. Once the proceeds are distributed, the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds.[13]

Of significance is our Supreme Court's recognition of "the general proposition that ERISA is not implicated once a plan administrator distributes the proceeds from a plan to the beneficiary . . . ."[14] Support is similarly found in decisions of the United States Supreme Court, which has implicitly recognized that whether ERISA preempts state law is a separate and distinct issue from whether an "[e]state could have brought an action in state or federal court against [the recipient of the plan proceeds] to obtain the benefits after they were distributed" with favorable citation of state court holdings

---

[11] *Id.* (citations and quotation marks omitted).

[12] *Sweebe*, 474 Mich at 155.

[13] *Id.* at 156.

[14] *Id.* at 155 n 2.

indicating "that ERISA did not preempt enforcement of allocation of ERISA benefits in state-court divorce decree as the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed."[15]

As the trial court recognized, the issue thus becomes the validity of the waiver provision contained in the divorce judgment. We address this issue by determining what constitutes a valid waiver and whether the fact that the waiver is contained in a default judgment affects its enforceability. In accordance with our Supreme Court's jurisprudence, at its most basic, a " '[w]aiver is the intentional relinquishment of a known right' " that "may be shown by express declarations or by declarations that manifest the parties' intent and purpose."[16] The recognized definition of the term "waiver" is "[t]he voluntary relinquishment or abandonment — express or implied — of a legal right or advantage . . . . The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it."[17] To effectuate a valid waiver, "no magic language" need be used.[18] "Rather . . . a waiver must simply be explicit, voluntary, and made in good faith."[19] In order to ascertain whether a waiver exists, a court must determine if a reasonable person would have understood that he or she was waiving the interest in question.[20]

---

[15] *Kennedy v Plan Administrator for DuPont Savings & Investment Plan*, 555 US 285, 299 n 10; 129 S Ct 865; 172 L Ed 2d 662 (2009) (citations and quotation marks omitted).

[16] *Sweebe*, 474 Mich at 156-157, quoting *Bailey v Jones*, 243 Mich 159, 162; 219 NW 629 (1928).

[17] Black's Law Dictionary (9th ed).

[18] *Sweebe*, 474 Mich at 157.

[19] *Id.*

[20] *Id.*

An "implied waiver" is defined as "[a] waiver evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive."[21] In addition:

> An implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it. Waiver may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived. Mere silence, however, is no waiver unless there is an obligation to speak.[22]

Our Supreme Court has applied this definition, stating:

> Waiver is a matter of fact to be shown by the evidence. It may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom. It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive. Proof of express words is not necessary, but the waiver may be shown by circumstances or by a course of acts and conduct which amounts to an estoppel.[23]

Within the context of estoppel, caselaw has also recognized: " 'There are some circumstances . . . wherein justice requires that a person be treated *as though* he had waived a right where he has done some act inconsistent with the assertion of such right and without regard to whether he knew he possessed it. This is the doctrine of estoppel.' "[24]

---

[21] Black's Law Dictionary (9th ed), p 1717.

[22] *Id*. at 1717-1718 (citation and quotation marks omitted); see also *Girlish v Acme Precision Prod, Inc*, 404 Mich 371, 388; 273 NW2d 62 (1978), citing Black's Law Dictionary (4th ed).

[23] *Klas v Pearce Hardware & Furniture Co*, 202 Mich 334, 339; 168 NW 425 (1918) (citation and quotation marks omitted).

[24] *Landelius v Sackellares*, 453 Mich 470, 480; 556 NW2d 472 (1996), quoting *Kelly v Allegan Circuit Judge*, 382 Mich 425, 427; 169 NW2d 916 (1969).

Reed does not dispute that she was aware of the lower court proceedings in which the decedent was seeking entry of a divorce judgment. Personal service of the complaint is conceded. Reed does not deny having been served with a proposed copy of the divorce judgment before its entry, notice of default, at least two notices of the hearing or trial date, and receipt of the final judgment as entered by the trial court. There is no suggestion that the proposed judgment differed in any significant manner, wording, or content from the actual judgment ultimately entered by the trial court. There is no suggestion that the very simple and straightforward judgment contained any confusing or ambiguous language that could not be easily comprehended. Reed acknowledges that she did not appear, respond, or file any pleadings in the original action and that she took no steps to challenge or set aside the final judgment.

We conclude that Reed's consistent course of acts and conduct established a valid waiver. Reed cannot take refuge in the assertion that her "mere silence" did not constitute a waiver. Although Reed neither made an express declaration nor engaged in a demonstrable physical act, this is insufficient to challenge the efficacy of her waiver because "mere silence" will not constitute a waiver "unless there is an obligation to speak." In the divorce proceedings, Reed was obligated to "speak" by filing an answer or contesting the entry of the default and subsequent judgment. As she did neither, her lack of action speaks louder than words and is just as binding. Reed's consistent failure to respond or to challenge the resultant judgment in a timely manner constitutes a waiver "implied by conduct inconsistent with the intent to assert the right."[25]

---

[25] *Burton v Reed City Hosp Corp*, 471 Mich 745, 760; 691 NW2d 424 (2005) (KELLY, J., dissenting), citing 28 Am Jur 2d, Estoppel and Waiver, § 209, pp 612-613.

We note that in the lower court proceedings to enforce the divorce judgment, Reed's counsel implied a lack of competency or impaired functioning on Reed's part at the time of the divorce, stating, "Mae Reed's conduct is consistent to someone suffering from a major disabling mental disorders [sic], if anything." First, there is nothing in the lower court record to substantiate this opinion, and it is difficult to discern how counsel came to this conclusion from interactions with his client occurring two years or more after the divorce proceedings occurred. Second, this opinion is highly questionable as it was not elicited from an expert in the field of either psychology or psychiatry and fails to recognize the inherent difference between an individual having a condition or diagnosis and the actual impact of that condition or diagnosis on a person's competency. This blatant assertion is also suspect given that Reed was clearly cognizant and functioning when, following the death of her ex-husband, she successfully filed a claim for his benefits. It would seem that any constraints or impediments she was operating under at the time the divorce judgment was entered were sufficiently resolved to permit her to pursue receipt of the decedent's benefits.

Finally, we address Reed's contention that because the judgment entered was the result of a default, the waiver contained therein was not enforceable. "A default judgment will not be disturbed on appeal absent a clear showing of abuse."[26] Statutory authority provides for the entry of default divorce judgments by stating that "[s]uits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity; and the court shall have the

---

[26] *Muscio v Muscio*, 62 Mich App 167, 170; 233 NW2d 224 (1975).

power to award issues, to decree costs, and to enforce its decrees, as in other cases."[27] In addition, it is routinely acknowledged:

"A court possesses inherent authority to enforce its own directives. A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy."[28]

This is consistent with "[w]ell-settled policy considerations favoring finality of judgments . . . ."[29]

A long history of caselaw recognizes that default judgments are conclusive adjudications and are as binding on the litigants as judgments obtained following a trial or settlement.[30]

In Michigan, it is an established principle that "a default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." . . . In other words, where a trial court has entered a default judgment against a defendant, the defendant's liability is admitted and the defendant is estopped from litigating issues of liability.[31]

Further, "[u]nless it is set aside by the court, a default judgment is absolute and is fully as binding, under the doctrines of estoppel and merger of judgment, and res judicata, as one after appearance and contest."[32] As

---

[27] MCL 552.12.

[28] *Wiand v Wiand*, 178 Mich App 137, 144; 443 NW2d 464 (1989), quoting *Schaeffer v Schaeffer*, 106 Mich App 452, 457; 308 NW2d 226 (1981).

[29] *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010).

[30] *Barnes v Jeudevine*, 475 Mich 696, 705; 718 NW2d 311 (2006).

[31] *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 78-79; 618 NW2d 66 (2000), quoting *Wood v DAIIE*, 413 Mich 573, 578; 321 NW2d 653 (1982) (citations omitted).

[32] 7 Michigan Pleading and Practice (2d ed), § 44:17, p 25.

such, "[d]efault judgments are not lesser judgments by any means. Like other judgments, a default judgment of divorce operates as a final statement of fact and law to the world."[33] We, therefore, reject Reed's contention that the default nature of the judgment negatively affected the enforceability of its provisions.

In conclusion, we hold that Reed's waiver of her rights to any of the decedent's benefits is valid and enforceable. Reed had knowledge and notice of the proceedings and their intended outcome and routinely failed to act or respond. This course of conduct evidenced her intention to waive any rights. Similarly, the default judgment in this matter is conclusive because Reed has neither asserted nor demonstrated any procedural error in its entry. Reed does not dispute having received notice of the proceedings, the proposed content of the judgment, and a copy of all documents filed. As she failed to respond or to seek having the judgment set aside, she cannot at this late date contend that only select portions of the judgment, favorable to her, are enforceable. We, therefore, concur with the trial court's determination that Reed must return to the decedent's estate all funds obtained from the plan administrator in conformance with her valid waiver in the divorce judgment.

Affirmed.

GLEICHER and M. J. KELLY, JJ., concurred with TALBOT, P.J.

---

[33] *Barnes,* 475 Mich at 709-710 (KELLY, J., dissenting).