# STATE OF MICHIGAN

# COURT OF APPEALS

LISA MARIE PACITTO-KELMENDI,

UNPUBLISHED
June 23, 2015

Plaintiff-Appellee,

v

No. 321530
Macomb Circuit Court
LC No. 2013-002260-DM

JOHN PREL KELMENDI,

Defendant-Appellant.

Before: MARKEY, P.J., and OWENS and GLEICHER, JJ.

PER CURIAM.

Defendant appeals by right a default judgment of divorce. Defendant contends that the trial court erred by not determining the home where the parties lived before their separation was marital property subject to equitable division and also by not granting joint legal custody and parenting time with the parties' two children. We affirm but remand for reconsideration of the issues of legal custody and parenting time. On remand, the trial court shall make findings of fact regarding each of the best interests of the child factors. MCL 722.23.

The parties were married in 1997 and have two children. Plaintiff filed for divorce in April 2013, and defendant was served with a copy of the complaint and summons on May 31, 2013. Defendant filed an answer to the complaint on June 17, 2013; an attorney filed an appearance for defendant on August 23, 2013. By order entered August 14, 2013, the trial court referred the matter to the Friend of the Court (FOC) for an investigation and report concerning custody and parenting time. On October 9, 2013, the FOC filed its report regarding custody and parenting time. The FOC investigator made findings regarding all best interests of the child factors except for (i) (reasonable preference of the child) and the catch-all factor (*l*). The FOC investigator found best-interest factors b, c, e, g, and h favored plaintiff, while the parties were equal with respect to factors d, f, j and k. MCL 722.23. The FOC report stated:

> Considering the above facts and circumstances, it has been determined that Plaintiff has proven by a preponderance of evidence that it would be in [the children's] best interest if she were awarded legal and physical custody. Therefore, it is recommended to the Court that upon a Judgment being entered in this matter, Plaintiff be awarded sole legal and physical custody of [the two children].

-1-

It is also recommended to the Court that Defendant be granted supervised parenting time one evening per week for two hours and alternating Sundays for two hours with said parenting time supervised by a mutually agreed upon third party.

Furthermore, it is very strongly recommended to the Court, that Defendant submit to a complete psychiatric evaluation and submit same to this Court.

A stipulated order for mediation was entered on October 1, 2013. The case was assigned to an attorney mediator, but the parties were unable to reach agreement. While mediation was pending, defendant filed a letter with the trial court on December 19, 2013, dismissing his attorney. The trial court entered an order on January 2, 2014, permitting defense counsel to withdraw. Subsequently, on January 28, 2014, plaintiff's counsel, defendant, and the appointed mediator, appeared before the trial court to report that mediation was unsuccessful. The trial court, with defendant present, scheduled the case for trial on Wednesday, March 19, 2014.

Before he withdrew from the case, defendant's attorney filed a motion on October 25, 2013 to void transfer of an alleged marital asset, i.e., the home in which the family lived on Hayes Road in Shelby Township. Defendant alleged that on June 10, 2002, plaintiff had entered a lease agreement with her parents in an "attempt to trump Defendant's interest in the marital property." Defendant attached various purported copies of deeds concerning the property and various statements from financial institutions bearing the names of plaintiff and defendant. One of the purported deeds, dated May 24, 2002, is a special warranty deed by the Federal National Mortgage Association conveying the Hayes Road property to plaintiff's parents, Bruno Pacitto and his wife, Sylvia Pacitto, and to plaintiff, as joint tenants with full rights of survivorship. This deed does not mention defendant or the fact that plaintiff and defendant were married. Some of the attached copies of documents purport to be mortgages granted on the property signed by plaintiff and defendant as plaintiff's husband. The motion was originally scheduled for hearing on November 4, 2013, but was adjourned to a hearing date of January 6, 2014. According to the register of actions, defendant failed to appear on that date, and the motion was denied for reasons stated on the record. No transcript of this hearing was prepared. The order dismissing defendant's motion to void transfer of asset entered on January 7, 2014.

On March 3, 2014, defendant belatedly filed a motion to strike or amend and objections to the FOC's recommendations concerning custody and parenting time. In general, both the objections and the motion to strike were personal attacks regarding the FOC investigator and the defendant's belief regarding the unprofessional manner in which the investigator conducted hearings. Defendant also attacked the findings of the investigator as being "based upon hearsay from an embittered spouse . . . ." On a positive note, defendant stressed the fact that he held a Ph.D. in education, and that if employed, he had a much higher earning potential than plaintiff. If unemployed, defendant asserted, he could support the children with public assistance.

Also, on March 3, 2014, defendant filed a motion to extend discovery. Defendant claimed that he needed "more time to conduct discovery into joint property or assets that he believes his wife his [sic] concealed." Defendant attached to this motion the same copies of documents that were attached to his earlier motion to void transfer of a marital asset. All of

defendant's March 3, 2014 motions were heard by the trial court on Monday, March 17, 2014, two days before the scheduled trial date.

At the March 17, 2014 hearing on defendant's motion to strike and objection to the FOC recommendations, the trial court informed defendant that his motions were unnecessary because the issues of custody and parenting time would be decided at the trial that was scheduled to start later in the week. Defendant indicated that he understood and proceeded to argue his motion to extend time to conduct discovery. Defendant then made a rambling statement that he didn't know where all the money he had earned had gone; he had various physical ailments, and he was unemployed but searching for a job and intended to pay child support. Defendant requested another four months for discovery because he felt "there is fraud, if you look at all the titles and stuff . . .." The trial court assured defendant that "those will be issues for trial . . . what properties [are] part of the marital estate, and then, what is a fair division of that."

In opposing defendant's motion to extend discovery, plaintiff argued that the case was nearly a year old; discovery was extended previously, and defendant had had ample time. The trial court agreed that discovery had already been extended once before, and the case had been mediated. The trial court determined that it would be too prejudicial to plaintiff to again adjourn the trial date at "the 11 and-a-half hour." Consequently, the trial court denied defendant's motion to extend discovery.

During his argument on the motion, which occurred in the afternoon, defendant stated that earlier that morning he had visited the Court of Appeals, apparently in Troy, and had been told that the trial court was "very sensible." Also, according to defendant he had been told "what I have to do, but I am not going to say it on the record." After denying his motion, the following colloquy occurred between the court and defendant:

>*Defendant.* Are you saying that you're denying my motion?
>
>*The Court.* I am denying your motion.
>
>*Defendant.* Well, I object to that. Thank you very much, your Honor. You've been very kind.
>
>*The Court.* I'm sorry I can't help you, sir.
>
>*Defendant.* Tomorrow I will file what they told me to file - -
>
>*The Court.* You do what you got to do and, if I'm wrong - -
>
>*Defendant.* No, no, no.
>
>*The Court.* I don't mind having a higher court tell me I'm wrong because I know I'm not always right.

Defendant continued to object, saying he was not ready, and the colloquy continued:

>*The Court.* I'll see - -

-3-

*Defendant.* - - due process - -

*The Court.* I will see you on Wednesday.

*Defendant.* Tomorrow morning.

*The Court.* No, I'll see you on Wednesday.

*Defendant.* Thank you. I'll be here Wednesday.

*The Court.* I'll see you then.

*Defendant.* I'll see you tomorrow.

*The Court.* No. You won't see me tomorrow.

*Defendant.* I'll see your clerk.

*The Court.* No. You won't because there's no process in law for you to file anything with my clerk. If you want to appeal my ruling, you need to go to the Court of Appeals and you need to file that with another clerk, not here.

*Defendant.* I didn't know. I'm sorry.

*The Court.* Well, I'm just telling you. I'm trying to save you a trip to this courthouse.

*Defendant.* Thank you very much, your Honor. Very kind of you.

On Tuesday, March 18, 2014, defendant filed a claim of appeal, dated March 17, 2014, concerning the "judgment of order entered" by the trial court on March 17, 2014. Defendant caused a copy of this "claim of appeal," file-stamped copy by the Court of Appeals, to be delivered to plaintiff's counsel and filed with the trial court before the instant case was called for trial on Wednesday morning, March 19, 2014. This Court subsequently dismissed the claim of appeal for lack of jurisdiction, finding that the March 17, 2014 order was not a final order under MCR 7.202(6)(a)(i). *Pacitto-Kelmendi v Kelmendi*, unpublished order of the Court of Appeals, entered March 25, 2014 (Docket No. 320876).

Defendant, however, did not appear for the March 19, 2014 trial; consequently, plaintiff's counsel moved for entry of a default judgment. The trial court stated that defendant had not contacted the court, and the Court of Appeals had not entered a stay of proceedings. The trial court reviewed the procedural history of the case, observed that defendant was aware that he was required to appear but did not, and granted plaintiff's request for entry of default. The court ruled it would take proofs regarding entry of a default judgment on April 2, 2014, and directed plaintiff's attorney to serve defendant a copy of the court's order granting default and setting the hearing date. There is no proof of service attesting that this was done or a notice of hearing in the trial court's file.

-4-

The April 2, 2014, hearing proceeded in the trial court as scheduled. Defendant did not attend. On inquiry of the trial court, plaintiff's attorney twice stated that he had mailed defendant a copy of the court's order, entered March 19, 2014, granting plaintiff's motion for a default, and scheduling hearing for entry of judgment for April 2, 2014. But as noted above, no proof of service appears in the trial court's file of the order. At the hearing, the trial court examined plaintiff, who was the sole witness, regarding marital property and matters related to the statutory best interests of the child factors regarding custody and parenting time.

Plaintiff testified that she had fully disclosed all of the parties' property and debt in the proposed judgment. Defendant had not exercised supervised parenting time since the winter holidays, and plaintiff had not heard from defendant since then. She and the children had left the home "[f]or fear of our safety" when defendant "became violent." On many occasions, defendant had told plaintiff "that he would kill me, and the children will be without a parent," he "didn't care what the children heard," and he threatened the children with physical violence. Defendant never assaulted the children, but he did assault plaintiff, in 2013, before she left. She did not seek a personal protection order. She had resided with her parents since April 2013.

The trial court also elicited from plaintiff testimony regarding her bank accounts, furnishings, and household items. The court asked who owned the Hayes Road property. Plaintiff testified her father did and that the property had been titled in her father's name for eleven years. Plaintiff testified that while the couple had lived at the property, they paid rent to plaintiff's father and paid utilities themselves. The court asked why plaintiff had not returned to the property once defendant was evicted, and plaintiff responded, "He was never evicted." The court said, "I thought Judge Shepherd evicted him," whereupon plaintiff's attorney stated that an order of eviction was issued, but it had not been executed yet. Defendant continued to reside at the Hayes Road home, which was where plaintiff's attorney mailed him notices, including that for the hearing on April 2, 2014.

After taking additional testimony from plaintiff as to the statutory best interests of the child factors with respect to custody and parenting time, the trial court stated its findings and conclusions of law on the record. The trial court found a breakdown in the marriage and no reasonable likelihood that the marriage could be preserved. The court ruled:

> Based upon the testimony and a review of the pleadings filed in this matter, I'm going to make a finding that the award of sole custody to mother, with parenting time reserved until Mr. Kelmendi presents himself to this court and asks for contact with the minor children is clearly in their best interest. I've reviewed all the statutory best interest factors. I've taken into consideration the conduct of the parties over the last year, since this matter has been filed, as well as plaintiff's testimony with regards to their prior parenting before the matter, the matter for divorce was filed by plaintiff.

The trial court also made its rulings regarding division of the marital property, which did not include the Hayes Road property.[1] The trial court further ruled that income would be imputed to defendant as if he were working full-time at a minimum-wage job.

The default judgment of divorce was entered on April 7, 2014. The judgment ordered defendant to pay $186 per month for two children but this was modified by separate order to $209 per month for two children. Regarding parenting time, the judgment provides:

> **IT IS ORDERED AND ADJUDGED** that Defendant's parenting time is hereby reserved until such time that Defendant presents himself to this court.

Meanwhile, defendant again sought relief from this Court regarding the trial court's rulings on March 17, 2014. On April 15, 2014, defendant filed an application for leave to appeal the trial court's order denying his motion to extend time for discovery, motion to strike or amend the FOC's recommendation as to custody, and objections. This Court denied defendant's delayed application for leave to appeal "for failure to persuade the Court of the need for immediate appellate review." *Pacitto-Kelmendi v Kelmendi*, unpublished order of the Court of Appeals, entered October 16, 2014 (Docket No. 321372).

Finally, on April 28, 2014, defendant filed a claim of appeal as to the judgment of divorce entered April 7, 2014. In his docketing statement, defendant asserts as the issues on appeal the entry of default judgment without notice to him, denial of parenting time, and the failure of the trial court to "make a full distribution of the marital home." In his brief on appeal, defendant also asserts that he was wrongfully denied joint legal custody of the children.

We address first defendant's claim that the trial court erred by not taking jurisdiction over and entering a marital property distributive order regarding the Hayes Road property. "To maintain an appeal, a person must ordinarily be 'aggrieved' by the lower court's decision." *Spires v Bergman*, 276 Mich App 432, 441; 741 NW2d 523 (2007); MCR 7.203(A). Plaintiff testified in the trial court that her father owned the Hayes Road property and that she and defendant paid rent. Further, defendant's motion to void transfer of a marital asset and the documents attached to it support plaintiff's testimony and belie any claim to aggrieved status by defendant with respect to the Hayes Road property. Specifically, defendant's motion and the attached documents showed that plaintiff's father took title to the property on May 24, 2002

---

[1] The property settlement awarded the parties their own motor vehicles, personal effects, and bank accounts. Plaintiff's account had an approximate value of $1,000, while defendant's (formerly a joint account) had zero. Plaintiff also received an account in hers and the children's names with an approximate value of $2,000. Plaintiff and defendant were to be responsible for their own debts. Plaintiff was awarded the children's furniture and household items. The judgment did not mention the Hayes Road property, but contained a "mutual dower" clause stating that the parties accepted the property in the judgment in full satisfaction of all claims, and a provision whereby the parties released each other from all claims. The judgment awarded each party 50 percent of the marital interest in any pension, annuity, or retirement benefits held by the other party. The court did not state values for pensions and retirement accounts.

(together with his wife and plaintiff with rights of survivorship) and that plaintiff had entered a lease agreement with her parents on June 10, 2002.

In addition, defendant filed in this Court a motion to waive fees and attached his affidavit concerning financial status. Paragraph 5 of the affidavit regarding assets lists the Hayes Road home and states, "My ex-wife or her father payes [sic] the mortgage etc." Defendant further says in paragraph 6 of the affidavit that the home that he claims to have a martial interest in is "under water over $50,000." An "underwater" home has "a mortgage loan for which more is owed than the property securing the loan is worth." *Merriam-Webster's Collegiate Dictionary* (11th ed, 2014), p 1365. In light of defendant's admissions and plaintiff's unrebutted testimony, the record does not show that defendant is aggrieved by the trial court's failure to address the home on Hayes Road. *Spires*, 276 Mich App at 441; MCR 7.203(A).

Moreover, defendant has waived any claim he may have had with respect to the Hayes Road property. A "waiver" is the voluntary and intentional relinquishment of a known right. *Reed Estate v Reed*, 293 Mich App 168, 175; 810 NW2d 284 (2011), citing *MacInnes v MacInnes*, 260 Mich App 280, 287; 677 NW2d 889 (2004). A waiver may also occur when a party voluntarily relinquishes or abandons, either expressly or by implication, a legal right or advantage. *Id.* at 176, citing Black's Law Dictionary (9th ed). While defendant filed motions in the trial court and claimed a marital interest in the Haynes Road property, he twice failed to appear at scheduled hearings to present his evidence, testimony, and arguments to the trial court. First, defendant failed to appear for a hearing on his own motion to void a transfer of martial asset, and second, he failed to appear at the scheduled trial when two days before the trial court had specifically advised defendant that martial property and its division would be at issue. Instead of presenting his claim to the trial court, the record reflects that defendant knowingly and intentionally chose not to do so. Defendant's failure to present his evidence and arguments regarding his claimed interest constitutes a waiver of this issue. *Reed*, 293 Mich App at 175-178.

Next, defendant claims that the trial court wrongfully denied him joint legal custody and unreasonably restricted visitation. He first argues that the hearing to enter default judgment was held without his being present and that he was not aware that default had been entered. The trial court ordered that defendant be given notice of the April 2, 2014 hearing to enter default judgment, and at the hearing, plaintiff's counsel twice assured the court that notice was mailed to defendant. Nevertheless, a proof service regarding the March 19, 2014 order of default and the April 2, 2014 hearing does not appear in the trial court's file. Thus, the record is ambiguous whether defendant was given notice of the hearing to enter the default judgment. We conclude, however, this does not provide a basis for granting defendant relief. MCR 3.210(4)(d), regarding notice of hearing for entry of a default judgment provides, "[i]f the default is entered for failure to appear for a scheduled trial or hearing, notice under this subrule is not required."[2] In this case, default was entered because defendant knowingly and intentionally failed to appear for trial.

---

[2] See also, MCR 2.603(b)(1)(d) (regarding notice of request for entry of default judgment): "If the default is entered for failure to appear for a scheduled trial, notice under this subrule is not required."

With respect to defendant's claim of error regarding parenting time, we conclude his appeal is not yet ripe. The judgment reserved the issue of parenting time until such time as defendant presented himself to the trial court, which must make such determination in the first instance. Defendant's claims regarding parenting time must be supported by evidence presented to the trial court. At this point, he has not been aggrieved by the judgment that does not address parenting time but is open to modification on defendant's request to the trial court.

Finally, with respect to joint custody, defendant's arguments are based on his feelings, beliefs and desire to participate in his children's lives. While defendant's desire to participate in the upbringing and education of his children is understandable, he has willfully absented himself from hearings in the trial court on this issue, and he has not presented any evidence or arguments to the trial court. With respect to custody and parenting time, we note that "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; see also *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010). The trial court has the duty to resolve any custody dispute in the best interests of the child. *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004).

MCL 722.23 sets forth 12 factors to be "considered, evaluated, and determined by the court" in deciding the children's best interests. Although the FOC in its October 2013 custody and parenting time recommendation made findings of fact regarding these factors, the trial court failed to make its own specific findings on each of the best-interest factors in its written judgment or bench opinion. In parenting time decisions, the trial court "must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them." *Spires*, 276 Mich App at 443. This is true even where the parties have reached an agreement regarding custody or parenting time. *Id*. at 442; *Harvey*, 470 Mich at 192-193. The court must also make findings under MCL 722.27a, which governs parenting time. A child "has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." MCL 722.27a(3).

Here, despite defendant's default, the lower court was required to set forth its findings of fact and conclusions of law on the best-interest factors and parenting time. The trial court's duty is to serve the child's best interests in fashioning an award of custody and parenting time. At the last hearing, the trial court examined plaintiff concerning the best-interest factors, and plaintiff's testimony supported a grant of legal and physical custody to her, at least until defendant presents himself to the trial court. Moreover, aside from the visits during the winter holidays, defendant apparently has not visited with the children while the case was pending. According to plaintiff's testimony, during the marriage, he was frequently absent from the home and had serious issues with drinking, hoarding, and anger. Consequently, on this record, we cannot find that trial court made findings of fact against the great weight of evidence or that the court committed a palpable abuse of discretion, but the court erred by not making specific findings of fact and conclusions of law under the Child Custody Act.

We therefore affirm the judgment of divorce but remand to the trial court to state its findings and conclusions under MCL 722.23 and MCL 722.27a regarding both custody and parenting time within 42 days of entry of this opinion. On remand, the trial court should afford

defendant an opportunity to present evidence and arguments given the ambiguity in the record that he may not have had notice of the April 2, 2014 hearing at which plaintiff's evidence was presented.

We affirm, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/Donald S. Owens
/s/Elizabeth L. Gleicher