# STATE OF MICHIGAN

# COURT OF APPEALS

REBECCA A. RUTHKO,

        Plaintiff-Appellee,

UNPUBLISHED
June 14, 2016

v

MARVIN J. MORRIS,

        Defendant-Appellant.

No. 326124
Wayne Circuit Court
LC No. 09-104757-DO

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

In this divorce action, defendant, Marvin J. Morris, appeals by leave granted[1] an order of the trial court requiring him to pay plaintiff, Rebecca A. Ruthko, $53,430 as a remedy for Morris's violation of an order previously entered in the case. We affirm in part, reverse in part, and remand for further proceedings.

In 2009, Ruthko filed for divorce from her now ex-husband, Morris. The same day her complaint was filed, the trial court entered an ex parte interim order to maintain the status quo. Under this order, Morris was to "maintain the family financial status quo consistent with past family practice, including . . . the payment of . . . insurance premiums . . . ." But on June 21, 2011, while this order was still in place, Morris made a change to a homeowners insurance policy. He reduced the itemized amount of coverage on several pieces of jewelry owned by Ruthko by significant amounts. Approximately a year later, several of these items were stolen in a robbery.

Ruthko made a claim with her insurer and received $61,267.50. In 2014, Ruthko filed a motion to enforce the status quo order. In relevant part, she argued that her recovery from the insurance company was reduced significantly because of Morris's changes to the policy. Morris admitted to altering the insurance coverage. Ultimately, the trial court ordered Morris to pay Ruthko $53,430, the amount it determined Ruthko lost because of Morris's change to the policy,

---

[1] *Ruthko v Morris*, unpublished order of the Court of Appeals, entered July 31, 2015 (Docket No. 326124).

denying Morris's motions for reconsideration and relief from judgment in the process. Morris appeals from this decision.

## I. NATURE OF THE PROCEEDINGS

Morris raises several issues related to his belief that what occurred in the trial court were contempt proceedings in disguise. He argues that the procedural safeguards applicable to contempt proceedings[2] were not followed, and accordingly, the trial court's order must be vacated. He also contends that these procedural deficiencies render the trial court's award of attorney fees invalid. However, Morris actively participated in the proceedings, first in propria persona, and then represented by counsel. His attorney filed a number of motions, raising several arguments challenging Ruthko's motion. Three hearings were held, and Morris appeared and vociferously argued his position. But never once did Morris raise any procedural concerns or claim that what was occurring were actually contempt proceedings in disguise. Rather, and as Morris acknowledges, this contention is being raised for the first time on appeal. As such, we decline to address the bulk of Morris's arguments related to his new-found belief that he has been subjected to contempt proceedings.[3] We recognize that "this Court may disregard the issue preservation requirements and review may be granted if failure to consider the issue would result in manifest injustice."[4] But in this case, "[Morris]'s actions and omissions essentially constitute a 'sandbagging' of the circuit court to create a potential appellate parachute to be used against an unfavorable ruling by the circuit court. Under such circumstances, we deem [Morris] to have abandoned th[ese] claim[s] of error on appeal."[5]

We do address one contention, however, because it is not affected by Morris's failure to raise it in the trial court. Morris contends that the trial court's failure to follow the procedures applicable to contempt proceedings deprived it of subject-matter jurisdiction. Although Morris

---

[2] See MCR 3.606. Specifically, Morris contends that the motion was not supported by an affidavit as required by MCR 3.606(A), that the trial court lacked a sufficient evidentiary basis to find him in contempt, and that the trial court failed to make adequate findings of fact and law.

[3] *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005) ("We need not address issues first raised on appeal.").

[4] *Id*. at 95-96.

[5] *Id*. at 96. Even if we were to address the issues, we would conclude that Morris is not entitled to relief. The trial court in a divorce action has the inherent authority to enforce its orders and, acting as a court of equity, fashion appropriate remedies. *Reed Estate v Reed*, 293 Mich App 168, 180; 810 NW2d 284 (2011). See also MCL 552.12. Rather than hold Morris in contempt, the trial court exercised its equitable powers to fashion an appropriate remedy given the nature of the violation at issue. To the extent Morris contends that the trial court was without authority to award Ruthko attorney fees, the trial court's award was specifically authorized by MCR 3.206(C)(2)(b), which allows the trial court to award attorney fees if the "fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply."

never raised the issue below, subject matter jurisdiction cannot be waived; rather, it may be raised at any time in the proceedings.[6] Supposing for the moment that what occurred was, in fact, a contempt proceeding, this Court has explained that "[e]ven assuming that MCR 3.606(A) applies in domestic relations cases," the failure to follow its mandates does not deprive the trial court of subject matter jurisdiction.[7] As a general matter, the circuit court has subject-matter jurisdiction over divorce proceedings.[8] Having jurisdiction over the instant matter, "Michigan courts have the inherent independent authority to punish a person for contempt. Consequently, even if the contempt proceedings were procedurally defective, the trial court was not deprived of its jurisdiction over the subject matter or the parties."[9]

## II. RES JUDICATA

As he did in the trial court, Morris argues that the doctrine of res judicata barred the trial court from ordering him to grant the relief sought by Ruthko. We disagree. "The application of a legal doctrine, such as res judicata, presents a question of law that [this Court] reviews de novo."[10]

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.[11]

Morris contends that in an order dated April 3, 2012, the trial court decided, or at a minimum, could have decided, the question of whether he violated the status quo order by reducing insurance coverage. According to Morris, the doctrine of res judicata thus barred Ruthko from raising the issue in a later-filed motion. The doctrine, however, only applies to bar a second, subsequently filed action. Here, there is only one action, and accordingly, res judicata cannot apply.

## III. CALCULATION OF DAMAGES

The last remaining issue pertains to the trial court's calculation of the amount Morris's violation of the status quo order cost Ruthko in lost insurance proceeds. We agree that the trial court committed error in this regard.

---

[6] *Harris v Vernier*, 242 Mich App 306, 316; 617 NW2d 764 (2000).

[7] *Porter v Porter*, 285 Mich App 450, 461-462; 776 NW2d 377 (2009).

[8] MCL 552.6.

[9] *Porter*, 285 Mich App at 462.

[10] *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007).

[11] *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004).

As explained, the trial court, in fashioning its remedy, was exercising its equitable powers.[12] A trial court's decision to grant or deny equitable relief is reviewed for an abuse of discretion, while its factual findings are reviewed for clear error.[13] "The function of courts of equity is to do justice, not injustice."[14] "Equity looks at the whole situation, and grants or withholds relief as good conscience dictates."[15] A trial court's decision to deny a motion for reconsideration is reviewed for an abuse of discretion.[16] A trial court's decision regarding a motion for relief from judgment is also reviewed for an abuse of discretion.[17]

After concluding that Morris had altered the insurance policy in contravention of the status quo order, the trial court ordered Morris to pay Ruthko the difference between what the insurance policy would have covered absent the changes, and what she actually received under the altered policy. Given the nature of the violation and the circumstances of the case, we have no qualms with this remedy. It was perhaps the only meaningful remedy that could be afforded to Ruthko. Moreover, the parties do not seem to dispute that this was an equitable way to remedy Morris's violation of the status quo order. Thus, we conclude that the trial court's method of enforcing its order was a reasonable exercise of its equitable powers.

However, we conclude that the trial court's factual findings, i.e., its determinations of the amount Ruthko should receive, are clearly erroneous. With regard to itemized items, such as the jewelry at issue, the relevant policy language provides:

> If the itemized article is totally lost or destroyed, we will pay the amount of itemized coverage for that article. However, if the market value of the itemized article immediately before the loss exceeds the amount of itemized coverage for that article, we will pay its market value immediately before the loss, up to 150% of the amount of itemized coverage for that article, but not more than the Maximum amount of coverage.

Stated differently, after a total loss, the insurer will ordinarily pay the itemized amount of coverage for each article. But if the market value of the item is higher than the itemized amount,[18] the insurer will pay the market value of the item, up to 150% of the itemized amount.

---

[12] See note 5, *supra*.

[13] *Olson v Olson*, 256 Mich App 619, 629; 671 NW2d 64 (2003); *Olsen v Porter*, 213 Mich App 25, 28; 539 NW2d 523 (1995).

[14] *Fox v Jacobs*, 289 Mich 619, 623; 286 NW 84 (1939).

[15] *Thill v Danna*, 240 Mich 595, 597; 216 NW 406 (1927).

[16] *Bergen v Baker*, 264 Mich App 376, 381; 691 NW2d 770 (2004).

[17] *Yee v Shiawassee Co Bd of Comm*, 251 Mich App 379, 404; 651 NW2d 756 (2002).

[18] In his brief on appeal, Morris contends that the policy will never pay more than the replacement cost of an item. This is not what the policy language states. Under the policy language, the replacement cost of an item is only relevant if that replacement cost is higher than

Ruthko's schedule shows that to determine how much she would have received under the original insurance policy, she took the itemized amounts for each item and then added 50%. Thus, she (and by accepting these calculations, the trial court) assumed that the market value of each item at the time of the robbery was at least 150% of the itemized amount stated in the original policy. Morris challenges the trial court's calculations with respect to five items: a tennis bracelet, which was originally itemized for $4,964; a wedding band, originally itemized for $2,918; a diamond pendant, originally itemized for $13,651; a pair of diamond earrings, originally itemized for $24,001; and an engagement ring, originally itemized for $32,264. Morris provided the trial court with letters, each dated July 3, 2012, from a jeweler. According to these letters, it would have cost $6,500 to replace the bracelet, $3,200 to replace the wedding band, $13,100 to replace the pendant, and $64,500 to replace the engagement ring. In an appraisal dated May 26, 2005, the earrings appraised for $27,200. Ruthko did not present any evidence challenging these values.

Thus, at (or at least very near) the time of the loss, the value of the tennis bracelet and wedding band was higher than their itemized amounts under the original policy. The policy would have paid the replacement cost, up to 150% of the itemized amounts. Because 150% of the itemized amounts exceeds the replacement costs of these items, the policy would have paid $6,500 for the bracelet and $3,200 for the wedding band. The pendant was itemized for slightly more than its replacement value. Thus, under the policy, the insurer would have paid the itemized cost, $13,651, for the pendant. The replacement cost of the engagement ring was nearly twice the itemized amount stated in the original policy. The insurer would have paid 150% of the itemized amount, or $48,396. In sum, for these four items, the policy would have paid $71,747.

With regard to the earrings, at a bare minimum, the original insurance policy would have paid $24,001, the itemized amount for the earrings under the original policy. We acknowledge that the only appraisal submitted to the trial court stating the value of these earrings is dated approximately 7 years prior to the date of loss. Because the operative question is the replacement cost of the earrings immediately before the loss, one might question the relevance of this appraisal. However, it is the only evidence in the record indicating the market value of the earrings. Thus, the available record establishes that at most, Ruthko would have received $27,200 for the earrings under the original insurance policy.

Thus, the most Ruthko would have received under the former policy was $98,947. She actually received $61,267.50. The difference between these amounts is $37,679.50. The trial court, however, ordered Morris to pay over $55,000 for the jewelry, less a setoff of $2,000 representing the amount Ruthko received for a stolen medal that belonged to Morris.[19] The trial court acknowledged that based on the evidence before it, Ruthko would not have received the full amount she sought. However, the trial court justified its decision by noting that Ruthko, had she been motivated to do so, could have obtained additional appraisals, which may have concluded that the cost to replace the various items was higher than the letters demonstrated.

the itemized value. If the itemized value is greater than the replacement cost, the insurer would pay the itemized value, not the replacement cost.

[19] Ruthko does not challenge whether this setoff is appropriate.

Thus, rather than base its calculations in the record evidence, the trial court speculated that additional appraisals could have been obtained, that these appraisals would have been for at least 150% of the itemized amounts stated in the original policy, and that the insurer would have accepted these appraisals over the appraisals provided to the trial court. The trial court's finding is clearly erroneous because it lacks any evidentiary support.[20] Rather, it is simply speculation regarding what could have occurred. Moreover, while Ruthko may not have been able to recover more from her insurer, if she intended on seeking the difference from Morris, she should have been equally motivated to obtain appraisals to demonstrate her entitlement to the additional 50% premium over the itemized amounts. Because the trial court's calculations are not supported by the record, they are clearly erroneous.

Accordingly, we reverse the trial court's order with respect to the amount it ordered Morris to pay Ruthko and remand the matter for entry of an order requiring Morris to pay Ruthko $37,679.50 with regard to the stolen jewelry, less the setoff of $2,000, for a total of $35,679.50. We affirm in all other respects. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Deborah A. Servitto

---

[20] See *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007) ("[F]actual findings are clearly erroneous where there is no evidentiary support for them . . . .").