*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. L. THOMAS, Minor.

UNPUBLISHED
June 27, 2019

No. 342183
Wayne Circuit Court
Family Division
LC No. 17-000220-NA

## ON REMAND

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this case involving the termination of parental rights, both respondent and the child's mother are in prison for convictions of second-degree murder. Respondent was treated as the child's putative father throughout the trial-court proceedings. Although he requested a DNA test to determine his paternity of the child, and although the trial court ordered that such a test occur at public expense, no such test was ever conducted. Nonetheless, the trial court terminated the parental rights of the child's "unknown biological father." On remand from our Supreme Court, and after proceedings on remand in the trial court, we again remand this matter to the trial court and order that the Department of Health and Human Services offer respondent, at the department's expense, DNA testing to confirm or deny his parentage of the child.

## I. BACKGROUND

### A. INITIAL PROCEEDINGS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), (h) (parental imprisonment), and (i) (termination of parental rights to the child's sibling). Respondent appealed, primarily arguing that DNA testing to confirm his paternity should have been completed before the trial court terminated his parental rights. On initial appeal, this Court affirmed the termination decision. *In re JL Thomas*, unpublished per curiam opinion of the Court of Appeals, issued August 14, 2018 (Docket No. 342183).

-1-

On further appeal, the Michigan Supreme Court vacated the judgment of this Court and remanded the matter back to this Court with instructions to remand the case to the trial court for further consideration, while retaining jurisdiction. The Supreme Court specifically directed the trial court to determine:

> (1) whether the trial court ordered a DNA test at Department of Health and Human Services expense, as stated by the referee, and, if so, whether the testing occurred; (2) whether the trial court extended the time for the putative father to establish paternity; and (3) whether the putative father was able to speak at the termination trial by speakerphone and whether he waived any issue regarding the DNA test or the establishment of paternity by not requesting an adjournment. [*In re JL Thomas*, 503 Mich 917; 920 NW2d 142 (2018).]

The Supreme Court further ordered that, "[a]t the conclusion of the hearing, the trial court shall forward the record and its findings to the Court of Appeals, which shall then reconsider these issues and the issues raised by the appellant in his brief on appeal." *Id.*

## B. TRIAL COURT PROCEEDINGS ON REMAND

As directed, this Court remanded this case to the trial court for consideration of the above issues, consistent with the Supreme Court's order, while retaining jurisdiction. *In re JL Thomas*, unpublished order of the Court of Appeals, entered December 28, 2018 (Docket No. 342183). In response to the remand order, the trial-court referee who presided over the termination trial made findings of facts on the record. First, the referee found that DNA testing for respondent was ordered to occur at the expense of the Department of Health and Human Services (DHHS). Yet, the DHHS provided no documentation at trial to indicate that DNA testing occurred. Second, the referee found that the trial court did adjourn the initial trial date to allow time for genetic testing. Third, the referee found that both the child's mother and respondent were present at the termination trial, telephonically, from their respective prisons. The trial court then approved—in writing—the referee's findings. After making its findings of fact, the trial court forwarded the record and its findings to this Court.

The record reflects that the termination trial was a combined one, involving both the biological mother and respondent, and the focus of the trial was on matters involving the biological mother. Furthermore, the combined trial—including appearances by lawyers, direct and cross examination of witnesses, closing arguments, and the referee's ruling from the bench—was relatively short (11 minutes). At no point in the trial did the referee affirmatively give respondent an opportunity to speak or even ask him on the record if he could hear over the telephone or understand the proceedings. The topic of DNA testing was never broached at trial. Although respondent did not object to the trial proceeding and did not request a further adjournment so that DNA testing could be accomplished, he was acting *pro per* and participating telephonically from prison.

As ordered by our Supreme Court, we now reconsider the issues considered by the trial court on remand, as well as the issues raised in respondent's brief on appeal. See *Thomas*, 503 Mich at 917.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews a trial court's factual findings for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). Factual findings are clearly erroneous if, although evidence supports them, this Court is definitely and firmly convinced that a mistake was made. *Id*. at 709-710. The third issue in the Supreme Court's remand order involved the issue of waiver, which is a mixed question of law and fact. *Reed Estate v Reed*, 293 Mich App 168, 173; 810 NW2d 284 (2011). Whether the facts of a particular case constitute a waiver is a question of fact, which we review for clear error, but the definition of a waiver is a question of law that we review de novo. *Id*.

The issues raised in respondent's brief on appeal are: (1) whether the trial court erred by failing to provide respondent with a DNA test, as ordered by the trial court; (2) whether the trial court erred by failing to adjourn the termination trial pending the outcome of DNA testing; (3) whether the trial court erred by finding that statutory grounds for termination existed before DNA testing occurred; and (4) whether the trial court erred by finding that termination was in the child's best interests before DNA testing was conducted. Because respondent did not raise these issues in the trial court, they are unpreserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). We review unpreserved issues for plain error affecting respondent's substantial rights. *Id*.

### B. TRIAL COURT'S FINDINGS ON REMAND

#### 1. DNA TESTING

The first issue raised in our Supreme Court's remand order is whether the trial court ordered a DNA test at DHHS expense and, if so, whether the testing occurred. *Thomas*, 503 Mich at 917. We conclude that the trial court did order a DNA test at DHHS expense, yet the testing did not occur.

On remand, the referee found that genetic testing was ordered at the pretrial hearing held on September 20, 2017. The transcript of that hearing confirms that the referee stated that she would order DNA testing at DHHS expense. The September 20, 2017 proposed order issued by the referee included the referee's recommendation for DNA testing. Yet, we note that the order was only signed by the referee—not the trial court judge. Thus, whether the trial court ordered a DNA test at DHHS expense presents a close question because "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Although the original order was unclear, the referee found on remand that genetic testing was ordered. The order containing that factual finding *was* signed by the trial-court judge before the record was returned to this Court, indicating that the trial-court judge agreed, as a factual matter, that an order for DNA testing was entered by the trial court. Therefore, both the referee and the trial-court judge found that the trial court ordered a DNA test at DHHS expense. Reviewing the trial court's factual findings for clear error, we conclude that evidence supports the trial court's findings on this issue. Because two separate judicial officers determined that they did, in fact, order such testing, we are not definitely and firmly convinced

that a mistake was made on this point. See *White*, 303 Mich App at 709-710. The trial court's finding on this point is not clearly erroneous—the trial court ordered a DNA test at DHHS expense, yet the testing did not occur.

## 2. EXTENSION OF TIME

The second issue raised in our Supreme Court's remand order is whether the trial court extended the time for respondent to establish paternity. *Thomas*, 503 Mich at 917. The trial court found that it did extend the time for respondent to establish paternity by moving the bench trial initially scheduled for October 17, 2017 to November 16, 2017. This finding is supported by the referee's statements at the September 20, 2017 hearing. At that hearing, the referee stated that a trial date was set for October 17, 2017, but it would set another date if the genetic test results were not received by that time. After one party's attorney indicated that a conflict on that date existed, the referee went off the record, and the referee then set the trial date for November 16, 2017. Thus, it appears that the trial date was moved to both allow more time for genetic testing and accommodate one of the attorney's schedules. The trial court's finding on this point is not clearly erroneous—the trial court extended the time for respondent to establish paternity.

## 3. WAIVER

The third issue raised in our Supreme Court's remand order is whether respondent was able to speak at the termination trial by speakerphone and whether he waived any issue regarding the DNA test or the establishment of paternity by not requesting an adjournment. *Thomas*, 503 Mich at 917. The trial court found that both the child's mother and respondent participated at the termination trial remotely from their respective prisons. At the bench trial, the referee acknowledged on the record that respondent was telephonically present. The trial court's finding on this point is not clearly erroneous—respondent was telephonically present at the termination trial.

The trial court did not, however, expressly answer the question whether respondent was able to speak during the termination trial. During her recitation of the findings of fact on the record, the referee did note that respondent "made noises including some laughter" during the trial. This implies a finding that respondent was able to speak during the trial. The referee also found that respondent did not object to the trial proceeding and expressed no request for an adjournment. The trial court's factual findings on this point are not clearly erroneous, as far as they go.

Applying these factual findings to the question of waiver, the trial court concluded that respondent waived the issue of "genetic testing and the establishment of paternity by failing to request an adjournment of the bench trial." Waiver is the intentional relinquishment of a known right that may be shown by express declarations or by declarations that manifest the party's intent and purpose. See *Reed Estate*, 293 Mich App at 176. In this case, respondent made no express declaration that manifested an intent to waive the issue of genetic testing and the establishment of paternity. Therefore, the trial court appeared to find an implied waiver, rather than an express waiver, based on respondent's inaction in allowing the termination trial to proceed without requesting an adjournment. An implied waiver is evidenced by a party's

decisive, unequivocal conduct reasonably inferring the intent to waive. *Id*. at 177. Respondent's silence, however, can only constitute a waiver if he had an obligation to speak. See *id*.

As explained above, the trial was a combined one, involving both the biological mother and respondent, and the focus of the trial was on matters involving the biological mother. The combined termination trial was quite brief. At no point during the bench trial did the referee give respondent an opportunity to speak or even ask him on the record if he could hear over the telephone or understand the proceedings. Thus, the referee treated respondent differently than the biological mother, who testified and otherwise fully participated in the trial with the help of her lawyer. The topic of DNA testing was never broached at trial. Although there were points in the proceedings when it would have been logical for respondent to raise an objection, respondent was acting *pro per*, telephonically, from prison. It is a stretch to conclude that this respondent's silence conclusively confirms that he knowingly, intentionally, and affirmatively agreed with the referee's termination of his rights without the earlier promised DNA testing. Cf *Artibee v Cheboygan Circuit Judge*, 397 Mich 54, 57; 243 NW2d 248 (1976) (noting that an "uncounseled defendant will be less able to defend himself" in court proceedings involving paternity-related matters). On this record, we conclude that the trial court clearly erred in determining that respondent waived the issue of genetic testing by failing to object to the trial proceeding and by failing to request an adjournment of the bench trial.

## C. RESPONDENT'S ISSUES ON APPEAL

Next, we turn to the issues raised in respondent's brief on appeal. Respondent first argues that the trial court erred by failing to provide him with a DNA test as initially ordered. Although the trial court clearly erred in finding that respondent waived this issue at the bench trial, respondent did forfeit the issue by remaining silent on this issue at trial. Therefore, we review this issue for plain error affecting substantial rights. See *Utrera*, 281 Mich App at 8.

On the record before us, we conclude that plain error did occur. Both the referee and the trial-court judge determined on remand that they ordered the DHHS to provide respondent with DNA testing, yet this was not done. The DNA testing was supposed to have been completed before respondent's parental rights were adjudicated, yet this also was not done. We conclude that respondent's substantial rights were affected by the failure to provide him with genetic testing. Both the referee and the trial-court judge confirmed in writing that they had ordered DNA testing, and respondent had the right to rely on this judicial order for testing (even if he otherwise had no statutory[1] or due-process right to DNA testing absent the judicial order). Had respondent been confirmed to be the child's biological father, he would have been entitled to various procedural and substantive rights before the trial court could terminate his fundamental right to be a parent. Alternatively, if the DNA test confirmed that respondent is not the biological father or if respondent had refused to participate in testing, then respondent's claims

---

[1] In a paternity action, an indigent putative father does have a statutory right to DNA testing at the state's expense. See MCL 722.716; *People v Marshall*, 82 Mich App 92, 97; 266 NW2d 678 (1978).

on appeal would fail, as they crucially depend on his parentage. Given this, we conclude that respondent has shown plain error affecting his substantial rights.

Accordingly, we remand this matter to the trial court with instructions that the trial court order the DHHS to offer respondent, within 30 days of the remand order and at the department's expense, DNA testing to confirm or deny his parentage of the minor child.

Remanded for additional proceedings consistent with this opinion. We retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly